# United States Court of Appeals

## For the First Circuit

No. 04-1915

UNITED STATES OF AMERICA,

Appellee,

v.

MARVIN D. HELDEMAN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge

Before

Boudin, Chief Judge,

Campbell and Cyr, Senior Circuit Judges.

John E. MacDonald with whom Larochelle & MacDonald, Inc. and Ronald Kliegerman were on brief for appellant.
Donald C. Lockhart with whom Robert Clark Corrente, United States Attorney, Luis M. Matos and Michael P. Iannotti, Assistant United States Attorneys, were on brief for appellee.

March 29, 2005

**BOUDIN**, <u>Chief Judge</u>.  In March 2004, Marvin Heldeman pled guilty in Rhode Island federal district court to one count of conspiracy to commit health care fraud, 18 U.S.C. § 371 (2000), seventeen counts of health care fraud, <u>id.</u> § 1347, three counts of conspiracy to distribute drugs, 21 U.S.C. § 846 (2000), and three counts of drug distribution, <u>id.</u> §§ 841(a)(1), (b)(1)(C).  In June 2004, the court sentenced Heldeman to 46 months' imprisonment, and ordered that his residence be forfeited for having "facilitated" his drug distribution offenses.  <u>Id.</u> § 853(a)(2).  On appeal, Heldeman challenges the district court's forfeiture order and seeks a remand for resentencing under <u>United States</u> v. <u>Booker</u>, 125 S. Ct. 738 (2005), and <u>United States</u> v. <u>Antonakopoulos</u>, 399 F.3d 68 (1st Cir. 2005).

Between October 2000 and December 2002, Heldeman, a New York dermatologist, wrote prescriptions for steroids and Oxycodone (a highly addictive and very strong pain medication) for a number of individuals--many of whom were bodybuilders and some of whom Heldeman had never seen or treated.  These prescriptions were medically unnecessary and were of the sort not typically prescribed by dermatologists.  For one bodybuilder, Timothy DiPaola, the prescriptions were made out in the names of DiPaola's friends, so that DiPaola could purchase the drugs with his friends' insurance and then use them himself.  Heldeman also took phone calls from pharmacies to confirm the validity of the prescriptions he had

written, and instructed his office manager and nurse to do the same if pharmacists called.

In return for writing prescriptions, Heldeman received various services of a sexual nature from his clients. These included having his clients pose for him in various states of undress while Heldeman took photographs or videotaped them. Roughly half of the prescriptions were written at Heldeman's home and some of the photography or videotaping occurred there; the pads on which Heldeman wrote the prescriptions that formed the basis for his indictment bore his home address; and Heldeman kept business cards in his apartment bearing his home phone number and the inscription "Dr. Marvin, The Bodybuilder's Friend."

On appeal, Heldeman argues that the forfeiture of his residence was error. The pertinent portion of 21 U.S.C. § 853(a) requires that anyone convicted of a controlled substance offense punishable by over one year's imprisonment "shall forfeit to the United States . . . any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." We have held that identical language in the civil forfeiture statute, id. § 881(a)(7), requires a "substantial connection" between the property at issue and the drug activity charged. See United States v. Desmarais, 938 F.2d 347, 353 (1st Cir. 1991) (collecting cases). Heldeman claims that same standard should be applied here.

Whatever the exact degree of connection required by the criminal forfeiture statute, see United States v. White, 116 F.3d 948, 950-52 (1st Cir. 1997) (leaving open the issue), the evidence provided to the district court in this case amply supported the forfeiture. All six of the drug offenses with which Heldeman was charged involved prescriptions written in his apartment. His apartment served as a base of operations for his crime just as surely as does a residence where drugs are actually delivered or stored. See Desmarais, 938 F.2d at 353.

Nor is it any defense to claim (as Heldeman does) that his activities could have been undertaken elsewhere. The statute requires only that the property "facilitate[]" the offense. Heldeman's proffered reading would cripple the statute and defeat the evident congressional intent to forfeit property used in committing the crime. See White, 116 F.3d at 950, 952; United States v. Rogers, 102 F.3d 641, 648 (1st Cir. 1996), cert. denied, 522 U.S. 879 (1997). It would also be at odds with our prior case law on civil forfeiture, which contains no suggestion that the property must be the only means of achieving the defendant's criminal goals in order to merit forfeiture. See, e.g., United States v. Parcel of Land and Residence at 28 Emery St., Merrimac, Mass., 914 F.2d 1, 4-5 (1st Cir. 1990) (collecting cases). Heldeman may not be what the average person thinks of when speaking

of a "drug dealer," but he does not dispute that his acts are within section 841 so the forfeiture provision applies.

Forfeitures are subject to the Eighth Amendment's excessive fines clause "if they constitute punishment for an offense." United States v. Bajakajian, 524 U.S. 321, 328 (1998). Here, forfeiture was "imposed at the culmination of a criminal proceeding and requires conviction of an underlying felony," id., and thus was punishment for the offense. See also United States v. Sherman, 262 F.3d 784, 795 (8th Cir. 2001) (subjecting § 853(a)(2) forfeiture to excessive fines analysis), cert. denied, 537 U.S. 940 (2002), and cert. denied, 537 U.S. 1095 (2002); United States v. Dicter, 198 F.3d 1284, 1292 (11th Cir. 1999) (same), cert. denied, 531 U.S. 828 (2000). Heldeman says the forfeiture was excessive.

A forfeiture will violate the Eighth Amendment's prohibition only if it is "grossly disproportional to the gravity of the defendant's offense." Bajakajian, 524 U.S. at 336-37. The case law invites us to consider as pertinent factors (1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant. Id. at 337-40. Our review of disproportionality is de novo, with due deference given to the district court's factual findings. Id. at 336 & n.10.

-5-

Heldeman's equity in his residence was just under $900,000. By contrast, the statute and sentencing guidelines provide for a penalty of up to $6 million for his offense conduct (a $1 million fine for each of six counts). See 21 U.S.C. § 841(b)(1)(C); U.S.S.G. § 5E1.2(c)(4). The forfeiture here amounts to a mere 15 percent of the maximum total fine permitted, and we are not impressed with Heldeman's reliance upon the sentimental value of his house. Bajakajian involved a forfeiture exceeding the guidelines level by a factor of 70. See 524 U.S. at 339-40.

Some circuits have treated a forfeiture of less than the statutory or guideline maximum as strongly suggesting or conclusive of compliance with the Eighth Amendment.[1] However this may be, there are no strong countervailing arguments in favor of Heldeman that would warrant a different result. Heldeman's offense conduct was not typical of drug dealing and did not involve guns or violence; but it was calculated, repeated, and done for Heldeman's benefit rather than misguided sympathy, and facilitated access to dangerous substances in the absence of medical need.

Turning to sentencing, Heldeman concedes that he did not raise a Sixth Amendment argument below in any of its variations or

---

[1]See, e.g., United States v. Bernitt, 392 F.3d 873, 880-81 (7th Cir. 2004), petition for cert. filed (U.S. Mar. 15, 2005) (No. 04-9247); United States v. Wallace, 389 F.3d 483, 486 (5th Cir. 2004), cert. denied, 125 S.Ct. 1426 (2005); United States v. Moyer, 313 F.3d 1082, 1086 (8th Cir. 2002); Dicter, 198 F.3d at 1292; United States v. 817 N.E. 29th Dr., Wilton Manors, Fla., 175 F.3d 1304, 1310 (11th Cir. 1999), cert. denied, 528 U.S. 1083 (2000).

labels. Accordingly, only plain error review is available. Here, the use of mandatory guidelines at sentencing was "error" and "plain" (applying the law as it stands today) but prejudice and fundamental unfairness remain to be shown. See United States v. Olano, 507 U.S. 725, 732-36 (1993); Antonakopoulos, 399 F.3d at 77.

With regard to these last two concepts, our principal concern in these Booker "pipeline" cases is with the likelihood that the defendant would have received a lesser sentence in a post-Booker regime of advisory guidelines. Antonakopoulos, 399 F.3d at 81. Heldeman points to his advanced age and physical condition. Heldeman is seventy-two years old and suffers from maladies including diabetes, prostate problems, vision problems, and brachial plexus palsy. His physician described his medical condition as "unstable" and in need of monitoring. Further, his unlawful activities--although serious--appear to have been the exception to an otherwise lawful medical practice.

The record contains some indication that the district court felt itself constrained by the guidelines. In particular, the court noted that Heldeman's arguments were "legitimate" and "somewhat mitigating," and should be considered in determining where within the guidelines range Heldeman's sentence should fall; but it concluded that these factors "do not approach what is required to justify a downward departure," that age and physical condition were both discouraged as grounds for departure, and that

-7-

Heldeman's traits, although worthy of consideration, were insufficient to take the case outside the "heartland" of the guidelines.

Guided by traditional plain error doctrine and Justice Breyer's specific reference to it in Booker, this court has adhered to the analysis mandated by Olano where dealing with unpreserved errors--although we have been generous in other respects, given the peculiarities of the situation created by Booker. The court has offered to treat almost any colorable claim in the district court as preserving the Booker issue and avoiding plain error requirements. See Antonakopoulos, 399 F.3d at 76. Even where plain error is required, we have recognized that a district judge may well not have expressed his or her reservations because the guidelines made them hopeless, and so invited proffers by the defendant as to what the defendant might have said if the guidelines had been advisory at the time.

Consonantly, we are inclined not to be overly demanding as to proof of probability where, either in the existing record or by plausible proffer, there is reasonable indication that the district judge might well have reached a different result under advisory guidelines. After all, it will be easy enough for the district judge on remand to say no with a minimum expenditure of effort if the sentence imposed under the pre-Booker guidelines regime is also the one that the judge would have imposed under the

-8-

more relaxed post-Booker framework. This opinion has been circulated to the other active members of the court.

In the present case, we are satisfied that the district judge might well have given a different sentence if the advisory guideline regime had been in force and accordingly vacate the sentence and remand for resentencing. Given the standard we are using, the remand should not be taken as either a suggestion or a prediction that the sentence will necessarily be altered. The forfeiture is affirmed. The sentence of imprisonment and supervised release is vacated and that aspect of the judgment remanded for further proceedings in accordance with this decision.

It is so ordered.