# United States Court of Appeals
## For the First Circuit

No. 03-2173

UNITED STATES OF AMERICA,

Appellee,

v.

GERMÁN GONZÁLEZ-MERCADO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Lynch, Circuit Judge.

Rafael F. Castro Lang for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney (Senior Appellate Attorney), with whom H. S. Garcia, United States Attorney, and Sonia I. Torres-Pabón, Assistant United States Attorney (Chief, Criminal Division), were on brief, for appellee.

April 1, 2005

**SELYA**, **Circuit Judge**. On March 3, 2003, defendant-appellant Germán González-Mercado pleaded guilty to three counts of carjacking and two counts of aggravated carjacking (i.e., carjacking resulting in serious bodily injury). See 18 U.S.C. § 2119(1), (2). The district court sentenced him to a total of 600 months in prison. On appeal, González-Mercado seeks to challenge the validity of his guilty pleas, the legal sufficiency of the evidence underpinning his conviction on one of the five counts, and his sentence. Concluding, as we do, that these assignments of error are meritless, we affirm the judgment below.

## I. BACKGROUND

On January 30, 2002, a federal grand jury sitting in the District of Puerto Rico returned an indictment charging the appellant with three counts of aiding and abetting carjackings in violation of 18 U.S.C. §§ 2, 2119(1) and two counts of aiding and abetting aggravated carjackings in violation of 18 U.S.C. §§ 2, 2119(2). The indictment alleged that the appellant and his confederates had appropriated five motor vehicles. Specifically, count one charged that the appellant and Miguel Alamo Castro (Alamo) carjacked a Toyota Echo on December 31, 2001; count two charged that the appellant, Alamo, and Ismael Ortega Santana (Ortega) carjacked a Nissan Xterra on January 10, 2002; count three charged that the appellant and Alamo carjacked a Chevrolet Cavalier on January 14, 2002; count four charged that the appellant and

Alamo carjacked a Nissan Pathfinder on the same date; and count five charged that the appellant and Ortega carjacked a Mitsubishi Montero on January 24, 2002. In two instances (counts one and three), the indictment further charged that the carjackings had resulted in serious bodily injury in violation of 18 U.S.C. § 2119(2).

The appellant initially maintained his innocence. He subsequently moved both to change his pleas and to dismiss count three insofar as it charged aggravated carjacking. In a memorandum accompanying the motion to dismiss, he argued that the incident giving rise to the "serious bodily injury" allegation — the rape of a woman known as G.K.L. — did not suffice to trigger liability for aggravated carjacking. The appellant's thesis ran as follows. The crime of carjacking requires, inter alia, the taking of a motor vehicle "from the person or presence of another by force and violence or by intimidation." 18 U.S.C. § 2119. If, however, "serious bodily injury . . . results," the crime becomes aggravated carjacking, a separate and distinct offense punishable under the heightened penalty provisions contained in 18 U.S.C. § 2119(2). While the appellant concedes that rape qualifies as a serious bodily injury within the purview of section 2119(2), see United States v. Vazquez-Rivera, 135 F.3d 172, 174-75 (1st Cir. 1998), he argues that the rape of G.K.L. was independent of, and thus did not "result" from, the taking of a motor vehicle.

-3-

The question of a change of plea was held in abeyance pending the disposition of the motion to dismiss. The parties stipulated to the facts underlying count three. We summarize them here.

On January 14, 2002, Alamo and the appellant, aiding and abetting one another, took a Chevrolet Cavalier from Gerald Morales by means of force and intimidation (including the brandishing of what appeared to be firearms). With Morales and Morales's passenger, Héctor Berrios, in the vehicle and the appellant at the wheel, the carjackers drove to various ATM machines and forced Morales at gunpoint to withdraw cash from his account. When that source of funds had been exhausted, Morales, in response to the appellant's demands, indicated that he had keys to G.K.L.'s apartment and that the carjackers might be able to obtain more money there. Intrigued by this possibility, the carjackers drove to the apartment complex. Upon their arrival, they locked Berrios (whose hands had been tied with his own shoelaces) in the trunk of Morales's automobile. The appellant retained the car keys.

Morales escorted the carjackers into G.K.L.'s apartment. The men entered G.K.L.'s bedroom and awoke her, demanding money. She replied that she had no cash and did not possess an ATM card. At that point, Alamo and Morales receded into the living room, but the appellant remained behind and raped G.K.L. When the appellant emerged from the bedroom, the trio departed with G.K.L.'s cell

phone and several bottles of wine. They then forced Berrios, at gunpoint, to direct them to his car (a Nissan Pathfinder). Once there, the appellant and Alamo perfected another carjacking (which became the subject of count four of the indictment). The carjackers did not release Morales and Berrios until they had made an unsuccessful attempt to empty Berrios's bank account.

Taking these facts into account, the district court, in an unpublished order, denied the motion to dismiss count three. In so ruling, the court rejected the appellant's contention that because G.K.L. was neither the owner of the carjacked vehicle nor physically present at the time of the carjacking, the rape could not be said to "result" from the carjacking offense. The court noted that in Vazquez-Rivera, we held that "injuries covered [by section 2119(2)] are not limited to those resulting from the 'taking' of a vehicle, but also include those caused by the carjacker at any point during his or her retention of the vehicle." Id. at 178. In the district court's view, that principle applied because, at the time of the rape, the appellant was still in retention of the carjacked vehicle, he kept the keys in his pocket, he had a victim trapped in the car's trunk, and he held the car's owner under his command. Thus, the serious bodily injury endured by G.K.L. could be said to "result" from the carjacking, as required by the statute.

Following the denial of his motion to dismiss, the appellant reactivated his motion for a change of plea. After some skirmishing, not relevant here, the district court conducted a hearing on March 3, 2003. The change-of-plea colloquy was thorough. Significantly, the appellant admitted during that colloquy that he and Alamo had placed Berrios in the trunk of Morales's vehicle; that he had retained the keys to the car during his visit to G.K.L.'s abode; and that, while in possession of the keys and in control of Berrios and Morales, he raped G.K.L. Based on these admissions, the district court permitted the appellant to enter a plea of guilty to count three as well as to the other four counts of the indictment. The court also ordered the preparation of a presentence investigation report (PSI Report) and set the case for sentencing.

On June 16, 2003, the district court convened the disposition hearing. The court ascertained that defense counsel had discussed the PSI Report with the appellant and fully explained its contents to him. The appellant acknowledged that he understood what the report said. For all intents and purposes, the defense raised no objections to the PSI Report.[1] The court then stated that, in the absence of any material objections to the PSI Report, it would adopt the findings contained therein.

---

[1]The only misgiving that defense counsel voiced was an extremely minor correction to the report that had nothing to do with any of the issues on appeal.

The court calculated a guideline sentencing range of 360 months to life (total offense level — 40; criminal history category — III). It sentenced the appellant to serve 600 months in prison, imposing consecutive 300-month terms for each of counts one and three, and concurrent 180-month terms for each of counts two, four, and five. Individually, each of these terms represented the statutory maximum for the offense of conviction. See 18 U.S.C. § 2119(2) (setting a twenty-five-year maximum for aggravated carjacking); id. § 2119(1) (setting a fifteen-year maximum for simple carjacking). The court also ordered a supervised release term of five years, a special assessment of $500, and restitution in the amount of $5,950. This timely appeal followed.

## II. ANALYSIS

González-Mercado seeks to challenge the validity of his guilty pleas, his conviction on count three, and his sentence. We consider each challenge in turn.

### A. **The Validity of the Guilty Pleas**.

In supplemental briefing and a letter submitted pursuant to Fed. R. App. P. 28(j), the appellant maintains that his pleas as to all five counts must be set aside because they were not entered in conformity with Fed. R. Crim. P. 11. To elaborate, he insists that his pleas were not tendered intelligently because they were based upon a mistaken understanding of the operation of the federal sentencing guidelines. Although a guilty plea waives most claims

-7-

of error, it does not preclude an attack on the voluntary and intelligent character of the plea itself. See Tollett v. Henderson, 411 U.S. 258, 267 (1973).

This claim derives from the Supreme Court's recent decision in United States v. Booker, 125 S. Ct. 738 (2005). The Booker Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt," id. at 756, insofar as the sentence is imposed under a mandatory guideline regime, see id. at 756-57, 767-68. The appellant posits that his guilty pleas are invalid because they were not informed by that holding (and, thus, were tendered on the erroneous assumption that the sentencing guidelines were mandatory).

We have heard and rejected this argument before. See United States v. Sahlin, 399 F.3d 27, 31 (1st Cir. 2005) (holding that "the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea"); see also Brady v. United States, 397 U.S. 742, 757 (1970) (stating that "a voluntary plea of guilty intelligently made in light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise"). Under the doctrine of stare decisis, then, the issue is

foreclosed.  See Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 348 (1st Cir. 2004) (explaining that "the doctrine of stare decisis precludes the relitigation of legal issues that have previously been heard and authoritatively determined"); Gately v. Massachusetts, 2 F.3d 1221, 1226 (1st Cir. 1993) (stating that stare decisis "renders the ruling of law in a case binding in future cases before the same court or other courts owing obedience to the decision").  As we explained in Sahlin, 399 F.3d at 31, the Booker decision, in and of itself, does not undermine the validity of the appellant's guilty pleas.

### B.  **The Conviction on Count Three**.

The appellant's next attack is more narrowly focused.  He asseverates that the district court erred in imposing a 300-month sentence on count three because the sexual assault of G.K.L. did not "result" from the Morales carjacking.  This asseveration rests on the premise that the district court should have sentenced the appellant in accordance with section 2119(1), which defines the crime of simple carjacking and caps sentences at fifteen years, rather than section 2119(2), which defines the crime of aggravated carjacking (i.e., carjacking resulting in serious bodily injury) and caps sentences at twenty-five years.

This argument is beset with problems.  Most prominently, it ignores the decision in Jones v. United States, 526 U.S. 227 (1999), in which the Supreme Court held that section 2119 does not

-9-

define a single crime with a choice of penalties dependent on sentencing factors but, rather, "establish[es] three separate offenses [section 2119(1), section 2119(2), and section 2119(3)] by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict," id. at 252. Just as the Jones Court recognized that a defendant found guilty of an offense under section 2119(1) could not be sentenced under section 2119(2), see id. at 229, so too we recognize that a defendant who pleads guilty to a violation of section 2119(2) cannot claim an entitlement to be sentenced under the more forgiving penalty provisions of section 2119(1).

This is an important distinction for the purposes of this case. 18 U.S.C. § 2119 contains three separate sections, defining three separate crimes (we have not mentioned section 2119(3) because that provision has no bearing on this case). Inasmuch as the three sections of 18 U.S.C. § 2119 limn separate offenses, the appropriate forum for contesting the applicability of any one section to the facts of a particular case is the guilt phase of the proceeding — not the sentencing phase.

Here, however, the appellant bypassed that opportunity by electing to enter an unconditional guilty plea. That plea waived all non-jurisdictional challenges to the resulting conviction under section 2119(2), save claims that the plea was not knowing and

voluntary.  See United States v. Rodriguez-Castillo, 350 F.3d 1, 4 (1st Cir. 2003) ("An unconditional guilty plea waives any and all independent non-jurisdictional claims arising out of alleged errors antedating the plea."); United States v. Cordero, 42 F.3d 697, 698 (1st Cir. 1994) (observing that "an unconditional guilty plea insulates virtually all earlier rulings in the case from appellate review").

The appellant tries to parry this thrust in two different ways.  First, he notes that he did raise a challenge to the applicability of section 2119(2) in his motion to dismiss count three.  That is true as far as it goes, but it does not go very far.  The appellant failed to preserve the issue for review when he entered an unconditional guilty plea to count three.  He could have attempted to avail himself of the procedure described in Fed. R. Crim. P. 11(a)(2), which allows a criminal defendant, with the consent of the court and the government, to preserve the right to appeal an adverse determination on a specific pretrial motion by entering a conditional guilty plea, but he did not do so.  Under these circumstances, his motion to dismiss died a natural death and he cannot now resurrect it.

The appellant also seeks, albeit somewhat perfunctorily, to make an end run around the waiver that normally would flow from the entry of an unconditional guilty plea.  The waiver doctrine does not apply to jurisdictional claims, see Cordero, 42 F.3d at

699, so the appellant labors to cast his challenge to the conviction on count three as jurisdictional in nature. He argues, in effect, that the stipulated facts do not establish a necessary element of the offense, namely, that the rape resulted from the carjacking and that, because the admitted conduct does not amount to a violation of the statute of conviction, the district court lacked jurisdiction to convict him.

The most gaping hole in this argument is that it cannot properly be classified as jurisdictional (and, therefore, as subject to review notwithstanding the appellant's unconditional guilty plea). In arguing to the contrary, the appellant clings to United States v. Rosa-Ortiz, 348 F.3d 33 (1st Cir. 2003), in which we recognized that a "guilty plea does not preclude [a defendant] from arguing on appeal that the statute of conviction does not actually proscribe the conduct charged in the indictment," id. at 36. We added that "a federal court has jurisdiction to try criminal cases only when the information or indictment alleges a violation of a valid federal law," id. (quoting United States v. Saade, 652 F.2d 1126, 1134 (1st Cir. 1981)), and that "jurisdictional challenges to an indictment may be raised at any time," regardless of the defendant's guilty plea, id.

The case at hand is a horse of a different hue. The appellant has not argued that the district court lacked authority to hear the case in the first instance because the indictment

-12-

failed to charge a cognizable federal offense. Nor could such an argument prevail. Each of the five counts charged crimes within the competence of the district court; count three charged in plain terms that a carjacking occurred, which "result[ed] in serious bodily injury" by reason of the appellant's sexual assault of G.K.L. That language sufficiently alleged a violation of section 2119(2). This is dispositive of the appellant's argument because, with few exceptions (none applicable here), "a federal criminal case is within the subject matter jurisdiction of the district court if the indictment charges . . . that the defendant committed a crime described in [a federal criminal statute]." United States v. González, 311 F.3d 440, 442 (1st Cir. 2002).

Even if the appellant's allegation that the admitted facts are insufficient as a matter of law to satisfy the "results" element of aggravated carjacking were accurate — and we doubt that it is[2] — that allegation would not raise a cognizable jurisdictional defect. In United States v. Valdez-Santana, 279 F.3d 143 (1st Cir. 2002), we rebuffed an attempt to shoehorn what was, in essence, a contention that admissible evidence could not establish a violation of the charged crime into the "narrow exception" that only jurisdictional issues may be appealed

---

[2]This court's precedents interpreting 18 U.S.C. § 2119(2) strongly suggest that the appellant's rape of G.K.L. falls within the statutory sweep. See, e.g., United States v. Lowe, 145 F.3d 45, 52-53 (1st Cir. 1998); Vazquez-Rivera, 135 F.3d at 178.

following an unconditional guilty plea.  Id. at 145-46.  That holding followed inexorably from our statement in Cordero, 42 F.3d at 699, in which we said that "a jurisdictional defect is one that calls into doubt a court's power to entertain a matter, not one that merely calls into doubt the sufficiency or quantum of proof relating to guilt."  See also United States v. Cruz-Rivera, 357 F.3d 10, 14 (1st Cir. 2004) (noting that the characterization of the argument that the factual underpinnings of a guilty plea do not establish an element of the offense as a jurisdictional challenge "confuses the constitutional limits on Congress's power with the jurisdiction of the federal courts"); González, 311 F.3d at 443 (determining that the category of jurisdictional defects that are not waived by a guilty plea does not include "routine questions as to the reach and application of a criminal statute" because such questions have "nothing whatever to do with the subject matter [jurisdiction] of the federal district court").  These precedents are controlling here.

To say more on this issue would be to paint the lily.  We find, without serious question, that the appellant's argument that his admitted conduct does not satisfy the "results" element of section 2119(2) is not jurisdictional in nature.  Consequently, further consideration of it is foreclosed by the appellant's unconditional guilty plea.

## C. **Alleged Sentencing Errors**.

The entry of an unconditional guilty plea does not itself waive challenges to the ensuing sentence. Sahlin, 399 F.3d at 32. Here, the appellant advances two such challenges. We consider them separately.

1. **Enhancement for Serious Bodily Harm**. The appellant suggests that the district court erred when it applied a four-level enhancement to his adjusted offense level on count three. See USSG §2B3.1(b)(3) (allowing for the disputed enhancement "[i]f any victim sustained [serious] bodily injury" in the course of the carjacking). This is too late and too little.

The suggestion is too late because the appellant neither interposed an objection to the PSI Report (which recommended the application of the enhancement) nor argued against the enhancement at sentencing. At best, then, the point has been forfeited, and review would be limited to plain error. See United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002).

In this instance, even plain error review is unavailable because the suggestion is not only too late but also too little. On appeal, González-Mercado has not offered any developed argumentation as to why it was error, let alone plain error, for the sentencing court to apply section 2B3.1(b)(3). This omission is all the more stark because the appellant admitted below that he raped G.K.L. while the carjacking was ongoing, that is, while

-15-

retaining control over both the carjacked vehicle and its occupants (Morales and Berrios).[3] This failure must be deemed a waiver. See, e.g., Muñiz v. Rovira, 373 F.3d 1, 8 (1st Cir. 2004) ("It is a bedrock appellate rule that issues raised perfunctorily, without developed argumentation, will not be considered on appeal."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (similar).

**2. Booker Claim**. Before us, the appellant raises for the first time a challenge to his sentence premised upon the district court's alleged error in making certain adjustments to the offense levels used to calculate his sentence under a preponderance of the evidence standard.[4] These include a four-level "grouping" adjustment, see USSG §3D1.4; a two-level role-in-the-offense enhancement, see id. §3B1.1(c); the previously discussed four-level "serious bodily injury" enhancement, see id. §2B3.1(b)(3)(B); and

---

[3]If and to the extent that the appellant intended to rely on his argument that under 18 U.S.C. § 2119(2) the rape did not result from the carjacking, see supra Part II(B), his reliance is misplaced. The applicable guideline does not track the language of the statute; instead, it covers serious bodily injury to "any victim." USSG §2B3.1(b)(3). It is hard to conceive of any interpretation of the phrase "any victim" that would exclude G.K.L. in the circumstances of this case. Cf. United States v. Hughes, 211 F.3d 676, 691 (1st Cir. 2000) (concluding that the indefinite reference to "victims" in USSG §2B3.2(c)(1) contemplates all victims of an extortion scheme, not merely the target of the extortionate demand).

[4]The appellant also claims that the sentencing court made an impermissible upward departure. This claim is frivolous. The guideline sentencing range was 360 months to life, and the court sentenced the appellant within that range.

a one-level enhancement for amount of loss, see id. §2B3.1(b)(7)(B).[5]

The appellant did not object to any of these adjustments below. In this court, however, he took the position that Blakely v. Washington, 124 S. Ct. 2531 (2004), prohibited them. Subsequent to filing his brief, he submitted a letter under Fed. R. App. P. 28(j), in which he augmented this contention with a general reference to Booker. He concedes that his Blakely/Booker challenge — for simplicity's sake, we henceforth refer to this as a claim of Booker error — was not preserved below and that, at most, he is entitled to plain error review. See United States v. Olano, 507 U.S. 725, 731-32 (1993); United States v. Antonakopoulos, 399 F.3d 68, 76 (1st Cir. 2005).

The plain error test is rigorous. We have stated that:

> Review for plain error entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.

United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). The appellant must carry the devoir of persuasion on all four facets of the test. See Antonakopoulos, 399 F.3d at 77.

---

[5]Some of these adjustments applied to fewer than all of the counts. For present purposes, however, such differentiations do not matter.

In this case, the first two elements present no problem. There is a <u>Booker</u> error, although it is not any of the alleged errors that the appellant identifies.[6] <u>Booker</u> teaches that the imposition of sentencing enhancements under a mandatory guidelines regime is erroneous. <u>See</u> <u>Booker</u>, 125 S. Ct. at 750, 756-57. Thus, a <u>Booker</u> error has occurred when a sentencing court has treated the guidelines as mandatory rather than as advisory. As we said in <u>Antonakopoulos</u>:

> The <u>Booker</u> error is that the defendant's Guidelines sentence was imposed under a mandatory system. The error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system.

---

[6]Had the district court erred in making the factual findings underlying these upward adjustments and, as a result, misapplied guideline enhancements in a way that increased the appellant's sentence, such errors would require resentencing even under our pre-<u>Booker</u> precedents. <u>United States</u> v. <u>Serrano-Beauvaix</u>, ___ F.3d ___, ___ (1st Cir. 2005) [No. 02-2286, slip op. at 7]. Here, however, the appellant does not specifically contest the factual basis for any of the enhancements, and it appears that the sentencing court had a solid factual basis for imposing them. The grouping, leadership role, and serious bodily injury enhancements were premised on facts that the appellant admitted during the change-of-plea colloquy and reaffirmed through his acquiescence in the PSI Report. The remaining enhancement was based upon a finding that the amount of loss exceeded $10,000 per count. While admissions of record do not directly cover this point, the appellant, by his own acknowledgment, carjacked five late-model vehicles. We think it likely that the value of each vehicle exceeded $10,000 — and the appellant has not even hinted to the contrary. Consequently, in a pre-<u>Booker</u> world, there was no plain error in ordering the upward adjustments.

399 F.3d at 75. For purposes of this case, the Booker error must be regarded as plain. See Johnson v. United States, 520 U.S. 461, 468 (1997) (stating that "it is enough that the error be 'plain' at the time of appellate consideration").

It is at step three of the plain error pavane that the appellant's argument stumbles. That prong requires a showing that the error affected substantial rights. Duarte, 246 F.3d at 60. In regard to unpreserved Booker errors, our main third-prong concern is with the likelihood that the district court might have sentenced the defendant more leniently in a post-Booker world in which the guidelines are only advisory. See United States v. Heldeman, ___ F.3d ___, ___ (1st Cir. 2005) [No. 04-1915, slip op. at 7]; Antonakopoulos, 399 F.3d at 75. The standard is one of "reasonable probability." Antonakopoulos, 399 F.3d at 78-79.

The appellant has not shown a reasonable probability — not even a possibility — that the district court would have imposed a different (more lenient) sentence had it understood that the sentencing guidelines were advisory rather than mandatory. That is fatal to his Booker claim. See id. at 75; see also id. at 77 (noting that the defendant bears the burden of persuasion with regard to the element of prejudice). In this regard, it is especially significant that, at oral argument — conducted after this court had handed down its decision in Antonakopoulos — the appellant's counsel did not advance any viable theory as to how the

-19-

Booker error had prejudiced his client's substantial rights. Nor does anything in the record suggest a basis for such an inference.

To cinch matters, we note that the guidelines, without any downward departure, would have allowed the court to impose an aggregate sentence as low as 360 months for the grouped counts. The court spurned that option and chose to sentence the appellant to nearly double that amount of prison time — a total of 600 months. The court explained that a sentence at the low end of the range would ignore the horrific details of the specific offense conduct and "depreciate the overall harm to the victims." When, under a mandatory guidelines regime, a sentencing court has elected to sentence the defendant substantially above the bottom of the range, that is a telling indication that the court, if acting under an advisory guidelines regime, would in all likelihood have imposed the same sentence. See United States v. Pratt, No. 04-30446, 2005 WL 629824, at *6 (5th Cir. Mar. 18, 2005) (per curiam) (finding that the district court's imposition of a sentence one year longer than the minimum required under the guideline range contradicted the defendant's effort to show a reasonable probability that he would have received a lower sentence under an advisory guideline regime); United States v. Lee, 399 F.3d 864, 867 (7th Cir. 2005) (indicating confidence that defendant's substantial rights were not affected by the mandatory guideline regime because the district court had imposed the maximum available sentence).

-20-

The sentence here is reasonable and, for the reasons stated above, we reject the appellant's request to vacate it on <u>Booker</u> grounds.

**III. CONCLUSION**

We need go no further. Discerning no merit in the appellant's various challenges, we affirm his convictions and sentence.

**<u>Affirmed</u>**.