**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 04-1561

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIAM REID,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Oberdorfer,* Senior District Judge.

H. Ernest Stone for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief, for the United States.

August 9, 2005

---

*Of the District of the District of Columbia, sitting by designation.

**OBERDORFER, Senior District Judge.** Appellant William Reid pleaded guilty to one count of conspiring to possess stolen firearms in violation of 18 U.S.C. §§ 371 & 922(j). Applying the then-mandatory federal Sentencing Guidelines, the district court imposed a sentence of 27-months imprisonment. Reid appeals his sentence. He contends that the district court erred in calculating his Guidelines sentencing range by increasing his offense level by four pursuant to section 2K2.1(b)(5) of the Guidelines. He also contends, for the first time on appeal, that even if the district court did not err in calculating the applicable Guidelines range, he is entitled to a remand for resentencing under United States v. Booker, 125 S. Ct. 738 (2005). Finding no error in the district court's Guidelines calculations and no basis for a Booker remand, we affirm.

## I. BACKGROUND

### A. Facts

On the evening of December 19, 2002, Reid and several other people (the "co-conspirators") came up with a plan to steal guns and trade the guns for cocaine. The target of the planned theft was Bart McNeel, the father of one of the co-conspirators. At the time the plan was concocted, the co-conspirators were in an apartment in Biddeford, Maine. In order to carry out the plan, five of the co-conspirators, including Reid, drove from Biddeford to McNeel's home in Westbrook, Maine. Reid kept watch outside, while two of the group entered the house and stole McNeel's gun

cabinet; the remaining two occupied themselves by driving around the neighborhood. The group of five then returned to the apartment in Biddeford, where the gun safe was opened and six guns were discovered.

The next day, December 20, 2002, Reid took the six guns that had been in the gun safe and, accompanied by two of the other co-conspirators, drove to another town to trade the guns for cocaine. Once there, Reid alone carried out the trade. He met with a person named Sam and traded four of the guns for two "rocks" of cocaine. Initially, Reid kept one rock for himself while giving one rock to one of the people who had made the trip with him. Ultimately, both rocks were shared with other co-conspirators who had not made the trip.

## B. Procedural History

On November 4, 2003, Reid was indicted by a federal grand jury for conspiracy to possess stolen firearms in violation of 18 U.S.C. §§ 371 & 922(j). A superseding indictment on December 19, 2003, added the charge of transferring firearms, knowing they would be used to commit a drug trafficking crime in violation of 18 U.S.C. § 924(h). That same day, pursuant to a plea agreement, Reid pleaded guilty to the first count and the government agreed to dismiss the second count.

The Presentence Investigation Report ("PSR") concluded that the stolen firearms were possessed "in connection with another

felony offense," requiring a four-level increase in Reid's offense level pursuant to section 2K2.1(b)(5) of the Sentencing Guidelines. According to the PSR, Reid's "other offense" was the possession of cocaine with the intent to distribute. Reid objected to this aspect of the PSR, arguing that his sharing of the cocaine he had acquired in exchange for the guns was not "distribution" because all of the people with whom he shared the cocaine had jointly agreed to acquire the firearms, to exchange them for drugs, and to share the drugs among themselves. The district court overruled his objection, holding that "where one or more individuals purchase or acquire drugs and then share the drugs with others, there is a distribution, notwithstanding the existence of a conspiracy or agreement among all of the parties involved to acquire and use drugs." Sentencing Hearing Tr. at 7. Thus, because "only . . . Reid . . . went inside the drug dealer's apartment to get the cocaine," Reid and the other members of the conspiracy "did not acquire possession of the drugs simultaneously" and, therefore, "Reid possessed with the intent to distribute." Id. The district court denied Reid's motion for reconsideration. Applying the four-level enhancement in section 2K2.1(b)(5) increased Reid's Guidelines sentencing range from 12-18 months to 24-30 months.

At the sentencing hearing, the government asked for a 30-month sentence, the top of the range, arguing that "Mr. Reid did play a more culpable role in this offense than the other participants"

because "he was the connection to the supplier, the person who alone went into the home and made the transfer of the guns which is the most important and significant and serious overt act in this conspiracy." Id. at 20-21. Reid's counsel asked for a sentence at the low end of the range, "[g]iven that [Reid had] the minimum number of points that you can get in Criminal History Category III, given that Mr. Reid did plead guilty, given that he did receive a three level reduction for acceptance of responsibility, and given that his culpability in this case is . . . at a level consistent with the other participants." Id. at 21.

The district court imposed a 27-month sentence, the exact middle of the Guidelines range. The court explained its choice of sentence as follows:

> Mr. Reid, I'm going to sentence you right in the middle of the range. [Government counsel] made some good arguments as to why I should go to the high end, [defense counsel] made some good arguments why I should go to the low end, but I conclude that you fit the average pattern which should place you in the middle of the range.

The court then spoke directly to Reid, stating:

> I have a lot of concerns about where you're headed. You're a young man, 24 years old, and you've already through your criminal history shown that you know how to get in trouble with the law. And you're now a convicted federal felon going off to federal prison. And if you continue in this pattern, you'll be back in front of me or some other Judge looking at much more serious time than you're looking at now. You could quickly become a career offender and basically you could be spending

-6-

the rest of your life wearing that kind of a uniform being in prison. I can't imagine that's the life you want.

. . .

But that's where you're headed in terms of what you're doing. And so somehow you've got to deal with your alcohol and drug abuse which clearly are the root of much of what you're doing. So I urge you to take advantage of every program that you can get in prison and thereafter because you're the only one that can make that change.

People like me can talk at you, but it's not going to make any difference until you make the decision. When your prison time is over, I'm going to sentence you to a period of supervised release which will carry with it . . . a number of conditions to try to assist you on that.

And rest assure if you violate those terms, you will be back in front of me looking at revocation and future prison time. But the decision really is in your hands as to whether this is something that you can put behind you or whether it's just the beginning or a continuation of dealing with Judges and prisons.

Id. at 22-24.

Reid filed a timely notice of appeal.

## II. DISCUSSION

## A. Application of Sentencing Guidelines Section 2K2.1(b)(5)

Reid's first argument on appeal is that the district court erred in calculating his sentencing range under the Guidelines by applying the four-level increase in offense level called for by section 2K2.1(b)(5).

Section 2K2.1(b)(5) provides:

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense level is less than level 18, increase to level 18.

The district court concluded that this enhancement applied because Reid had possessed the stolen firearms in connection with the felony offense of possession with intent to distribute. Reid argues on appeal, as he did before the district court, that he did not commit the offense of possession with intent to distribute. In particular, he argues, relying on the Second Circuit's decision in United States v. Swiderski, 548 F.2d 445 (2d Cir. 1977), that providing the cocaine he acquired to other members of the conspiracy was not "distribution" because he acquired and transferred the cocaine pursuant to a joint agreement to steal guns and trade them for cocaine solely for the conspirators' use.

In Swiderski, the court held that there had been no "distribution" where a man and his fiancee, acting in concert the entire time, jointly acquired and used drugs. Even assuming that the Swiderski rule applies in the First Circuit (which has not been definitively established), we are not persuaded that the facts of the present case warrant its application. Unlike the two people involved in the conspiracy in Swiderski, the co-conspirators in the

-8-

present case did not act in concert at all times. Rather, only two of the five (not including Reid) actually stole the gun safe, only Reid and one other made the trip to trade the guns for cocaine, and only Reid himself was actually present when the trade was made, giving him sole possession of the cocaine for a time before it was transferred to the other co-conspirators. Under these circumstances, we believe that there has been "distribution" and, therefore, that the Swiderski rule does not apply. See, e.g., United States v. Washington, 41 F.3d 917, 919-20 (4th Cir. 1984). Accordingly, we hold that the district court properly applied the four-level enhancement in section 2K2.1(b)(5) for possessing a firearm in connection with another felony offense.

## B. **United States v. Booker**

Reid also contends that he is entitled to a remand for resentencing under United States v. Booker, 125 S. Ct. 738 (2005), because he was sentenced under the mandatory Guidelines system eliminated by Booker. As the claim of Booker error is raised for the first time on appeal, a plain error standard of review applies: there must be (1) an error (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. See United States v. Olano, 507 U.S. 725, 732 (1993); United States v. Antonakopoulos, 399 F.3d 68, 77 (1st Cir. 2005); United States v. Vega Molina, 407 F.3d 511, 533 (1st Cir. 2005); United States v.

González-Mercado, 402 F.3d 294, 302 (1st Cir. 2005).  As Reid's sentence was imposed under a mandatory system, he satisfies the first two prongs of the plain error test.  See Antonakopoulos, 399 F.3d at 77; see also United States v. Heldeman, 402 F.3d 220, 223 (1st Cir. 2005).

The next two requirements, prejudice and fundamental unfairness, are satisfied if "the appellate panel is convinced by the defendant based on the facts of the case that the sentence would, with reasonable probability, have been different" were the lower court not constrained by the Guidelines.  Antonakopolous, 399 F.3d at 81.  Reasonable probability is not an "overly demanding" test.  Heldeman, 402 F.3d at 224.  Rather, it exists "where, either in the existing record or by plausible proffer, there is reasonable indication that the district judge might well have reached a different result under advisory guidelines."  Id.; see also United States v. Wilkerson, 411 F.3d 1, 10 (1st Cir. 2005).  However, the mere "theoretical possibility" that the district court would impose a more favorable sentence is not enough to satisfy this test.  See United States v. Mercado, No. 04-1656, 2005 WL 1404470, at *9 (1st Cir. Jun. 16, 2005).

As the Antonakopoulos test was adopted after briefing and argument in the present case, Reid was given the opportunity to file a supplemental brief and/or supplement the record on appeal. He did both, filing an affidavit from his mother, Joan Reid,

-10-

detailing his personal and family history, and filing a supplemental brief.

In his supplemental brief, Reid argues that he is entitled to a Booker remand for resentencing because his family history, his personal history and his present family circumstances, as set forth in his mother's affidavit and in the PSR, are mitigating factors that create a "reasonable probability" that the district court would have imposed a more favorable sentence under an advisory regime. In particular, he emphasizes the following facts:

(1) Reid's father left the family when Reid was in first grade and had no significant further contact with Reid until he was seventeen;

(2) after Reid's mother and father divorced, his mother moved in with another man, James Reagan, who was an alcoholic;

(3) Reid was close to Reagan, but also had to defend his mother when Reagan was abusive to her;

(4) Reid began drinking at age 10, smoking marijuana at age 12, and using cocaine at age 14;

(5) Reid left school at age 14;

(6) at age 16, Reid was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), but treated only briefly and without success;

(7) despite his many years of abusing alcohol and drugs, Reid has never been treated for substance abuse;

-11-

(8) Reid is the father of a young son (now six years old) and, although he is no longer in a relationship with the mother of his son, he has been the de facto father of her older child, his son's half-sister; and

(9) when able, Reid provides financial support to his son, his son's mother, and his son's half-sister.

With respect to Booker, it is now established that "[o]ne category of claims that might warrant remand on plain error review is the one involving arguments that [] mitigating factor[s] existed but w[ere] not available for consideration under the mandatory Guidelines," if there is a reasonable probability that the district court would impose a more favorable sentence in light of these factors. See United States v. McLean, 409 F.3d 492, 505 (1st Cir. 2005) (internal quotations omitted). And, as described above, Reid's proffer on appeal identifies a number of such potentially "mitigating" factors. However, we are not convinced that these mitigating factors create a reasonable probability that the district court would have imposed a more favorable sentence under an advisory regime.

Almost all of the facts cited by Reid in his supplemental brief and in the affidavit of his mother were contained in his PSR and, therefore, were available to the district court for consideration at the time of sentencing. See McLean, 409 F.3d at 505 (noting that the defendant "actually made the mitigating

arguments that he now posits before the district court" and that "[h]e does not elaborate how he could make them more convincingly on remand"); United States v. Brennick, 405 F.3d 96, 102 (1st Cir. 2005) (refusing to remand for resentencing to permit the district court to give "more emphasis to mitigating factors that ordinarily have little influence under the Guidelines, such as his troubled childhood and drug addiction[,]" where those facts were available to and acknowledged by the district court at sentencing).  Nor are the facts identified by Reid, unfortunately, unique or even rare. Cf. Wilkerson, 411 F.3d at 10 (basing remand for resentencing in part on the fact that the district court had observed at sentencing that the defendant "had the most horrible young life he had seen in 17 years on the bench"); Heldeman, 402 F.3d at 224 (remanding for resentencing where district court indicated that defendant's age and physical condition were worthy of consideration but did not warrant a downward departure under the mandatory Guidelines).  In addition, the sentence imposed falls in the precise middle of the Guideline range, suggesting, although not proving, that the district court did not feel constrained by the Guidelines.  See McLean, 409 F.3d at 505 (stating in denying Booker remand: "We note that [the defendant] was sentenced in the middle of the guideline range, rather than at the bottom, and so the district court could have given him a lower sentence under the old regime. That it did not do so speaks volumes."); see also United States v. Kornegay,

-13-

410 F.3d 89, 99-100 (1st Cir. 2005) ("That the court sentenced [the defendant] at the low end of the applicable Guideline range is not, by itself, sufficient to show a reasonable probability of a lesser sentence under the advisory system."). And while it is certainly not necessary that the district court articulate that it felt constrained by the mandatory Guidelines, see Antonakopoulos, 399 F.3d at 81, it is still relevant that the district court here expressed no such concern. Cf. Wilkerson, 411 F.3d at 10 (basing remand in part on the fact that "[t]he district judge sentenced [the defendant] to the lowest available sentence under the Guidelines" and "repeatedly expressed his concern about disparate treatment between federal and state court sentences in similar cases, but stated that the Guidelines did not permit him to take that disparity into account"). Indeed, here the district court expressly stated that it was selecting the sentence it imposed as an appropriate accommodation of both the defendant's good arguments for lenience and the government's good arguments for a harsher sentence.

Taking all of these facts into consideration, we conclude that there is not a reasonable probability that the district court would impose a more lenient sentence under an advisory Guideline system. Accordingly, Reid is not entitled to a Booker remand for resentencing.

### III. CONCLUSION

For the reasons stated in the foregoing opinion, we affirm.