# United States Court of Appeals
## For the First Circuit

No. 04-1888

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ GUZMÁN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Boudin Chief Judge,
Torruella and Selya, Circuit Judges.

Michael R. Schneider, Ryan M. Schiff, and Salsberg & Schneider
on brief for appellant.
Michael J. Sullivan, United States Attorney, and Patrick M.
Hamilton, Assistant United States Attorney, on brief for appellee.

August 17, 2005

**SELYA**, **Circuit Judge**.  Defendant-appellant José Guzmán asserts that the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005), entitles him to resentencing under non-mandatory sentencing guidelines.  Employing the plain error analysis applicable to unpreserved claims of Booker error, we conclude that the appellant suffered no cognizable prejudice resulting from the application of a mandatory guidelines system.  Accordingly, we affirm his sentence.

## I.

### Background

On November 10, 1994, a federal grand jury handed up a multi-count indictment charging the appellant with one count of conspiracy to possess cocaine base with intent to distribute, seven counts of possessing with intent to distribute, distributing, and aiding and abetting the distribution of cocaine base, and one count of conspiracy to acquire firearms in exchange for illegal drugs. See 21 U.S.C. §§ 841(a)(1), 846; 18 U.S.C. §§ 2, 371.  These charges stemmed from the appellant's alleged participation, with four codefendants, in  the sale of crack cocaine to undercover officers on eleven separate occasions and the coconspirators' plan to acquire weapons from those officers in exchange for drugs.

After negotiating a plea agreement, the appellant pleaded guilty to all counts.  The district court convened a disposition hearing on February 9, 1996, and sentenced the appellant to a 240-

-2-

month incarcerative term (a term that was within the applicable guideline sentencing range of 210 to 262 months). The appellant challenged that sentence but, after some procedural skirmishing (not relevant here), a panel of this court affirmed it. United States v. Guzmán, 132 F.3d 31 (1st Cir. 1997) (unpublished table decision).

On October 7, 1998, the appellant filed a habeas petition, see 28 U.S.C. § 2255, in which he claimed, among other things, that his sentence had been illegally imposed. The district court wisely appointed counsel, who filed an amended section 2255 petition. On June 4, 2002, the court granted the amended petition; it found that defense counsel's failure at sentencing to present humanizing evidence and to argue for a sentence at the low end of the guideline sentencing range constituted ineffective assistance. See Guzmán v. United States, No. 98-12086, slip op. at 1 (D. Mass. June 4, 2004) (unpublished). Accordingly, the court vacated the appellant's sentence.

The district court convened a new sentencing hearing on June 18, 2004. This time, the court imposed a 210-month incarcerative term. That term was at the nadir of the guideline sentencing range. This timely appeal followed.

## II.

## Analysis

In this venue, the appellant challenges his 210-month sentence. This challenge devolves from Booker, in which the Supreme Court held that a defendant's Sixth Amendment right to trial by jury is violated when his sentence is imposed under a mandatory guidelines system that gives decretory significance to judge-found facts. 125 S. Ct. at 756. The appellant argues that because he was resentenced prior to the Booker decision and under the mandatory guidelines system then in effect, his sentence is unconstitutional.

The appellant did not make anything resembling a Sixth Amendment objection at the time of his resentencing, so his claim of error is unpreserved. The appellant concedes that point, but he mounts an aggressive attack on this court's standard of review for unpreserved claims of Booker error. In the course of that attack, he maintains both that the articulation of the plain error test, as set forth in United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005), and its progeny, should not apply to him and that, in all events, the application of that test violates due process. In his view, we ought to abandon Antonakopoulos and instead adopt one of two alternate approaches. We first repulse the appellant's assault on Antonakopoulos and then, applying our wonted standard of

review, determine whether he is entitled to the relief that he seeks.

## A.

### Standard of Review

Where, as here, a claim of Booker error has not been preserved, it is deemed forfeited and we must apply the plain error standard, as articulated in United States v. Olano, 507 U.S. 725, 732 (1993).  See Booker, 125 S. Ct. at 745; United States v. Heldeman, 402 F.3d 220, 223-24 (1st Cir. 2005).  In order to establish entitlement to relief under that stringent test, an appellant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

In Antonakopoulos, this court addressed the application of the plain error test in the context of unpreserved claims of Booker error.  399 F.3d at 75.  We explained that a Booker error occurs not when the judge finds facts necessary to the sentencing determination but, rather, when the defendant is sentenced under a mandatory guidelines system that gives decretory significance to judge-found facts.  Id.  Thus, in the hindsight provided by Booker, the first two prongs of the plain error test are met when the

defendant shows that the sentencing court treated the guidelines as mandatory rather than advisory. Id.

With respect to the third plain error prong, the defendant bears the burden of showing that, had the error not occurred, there is a "reasonable probability" that he would have received a lesser sentence. Id. Under that standard, "the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." Id. at 78 (quoting United States v. Dominguez Benitez, 124 S. Ct. 2333, 2340 (2004)). This means that the defendant must persuade the court that were it not for the then-mandatory nature of the sentencing guidelines, it is reasonably likely that the district court would have imposed a more lenient sentence.

The appellant makes a twofold rejoinder to this format. First, even though he did not preserve his claim of Booker error, he nonetheless asseverates that the Duarte plain error test, adopted in Antonakopoulos, should not apply to his case because he could not reasonably have anticipated the "dramatic transformation in sentencing law" wrought by Booker. Requiring such "clairvoyance," the appellant says, violates his due process rights under the Fifth Amendment.

We reject these importunings. As a general rule, "a criminal defendant must seasonably advance an objection to a potential constitutional infirmity in order to preserve the point."

Derman v. United States, 298 F.3d 34, 44 (1st Cir. 2002). While a narrow exception to this principle applies where "objections or defenses . . . were not known to be available at the time they could first have been made," Bennett v. City of Holyoke, 362 F.3d 1, 7 (1st Cir. 2004) (internal quotation marks omitted), that exception is pertinent only if "(i) at the time of the procedural default, a prior authoritative decision indicated that the defense was unavailable, and (ii) the defense became available thereafter by way of supervening authority." Id. Alternatively stated, the exception applies only when the futility of raising an objection or defense was unequivocally apparent at the time in question.

That is clearly not the case here. At the time of the appellant's resentencing, the constitutionality of the sentencing guidelines was a hot-button issue in criminal law circles. The Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), had paved the way for a Sixth Amendment challenge to the federal sentencing guidelines. Moreover, a closely related issue, involving state sentencing guidelines, was pending before the Supreme Court — an issue that the Court resolved, favorably to the defendant, in Blakely v. Washington, 542 U.S. 296 (2004). The bottom line is that, at the time the district court resentenced the appellant, the constitutionality of the guidelines was very much in play. Under these circumstances, there is no principled basis for excusing the appellant's procedural default. See United States v.

Del Rosario, 388 F.3d 1, 13-14 & n.8 (1st Cir. 2004) (rebuffing a similar argument).

The second facet of the appellant's rejoinder is equally unavailing. He entreats us to modify our approach to forfeited errors in the Booker context and adopt either the presumption-of-prejudice approach, see United States v. Barnett, 398 F.3d 516, 526-28 (6th Cir. 2005), or the automatic-remand approach, see United States v. Crosby, 397 F.3d 103, 117-18 (2d Cir. 2005). We decline this invitation.

We recognize that the courts of appeals have taken a variety of approaches to the treatment of unpreserved claims of Booker error. In a multi-panel circuit, however, newly constituted panels ordinarily are constrained by prior panel decisions directly (or even closely) on point. See Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 349-50 (1st Cir. 2004) (discussing the law-of-the circuit doctrine); United States v. Rodriguez, 311 F.3d 435, 438-39 (1st Cir. 2002) (similar). So it is here: we are firmly bound by this court's prior panel opinions, such as Heldeman and Antonakopoulos.

To be sure, there are two narrow exceptions to this iteration of the law-of-the-circuit principle. Under the first of these exceptions, "[a]n existing panel decision may be undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court, an en banc opinion of the circuit court, or a statutory overruling." Williams v. Ashland Eng'g Co.,

45 F.3d 588, 592 (1st Cir. 1995).  Under the second exception, which operates in instances that fairly may be described as hen's-teeth rare, authority that postdates the original decision, although not directly controlling, may nevertheless offer a compelling reason for believing that the former panel, in light of new developments, would change its collective mind.  See id. Neither of these exceptions is apposite here.  See United States v. Villafane-Jimenez, 410 F.3d 74, 85 (1st Cir. 2005) (per curiam) (rejecting a similar entreaty to revisit Antonakopoulos); United States v. Bailey, 405 F.3d 102, 114 (1st Cir. 2005) (same).  Thus, there is no justification for this panel to reconsider the recent decisions in the Heldeman-Antonakopoulos line of cases.

## B.  **The Merits**.

Because a forfeited Booker error engenders review for plain error, the four-part Duarte test applies.  See United States v. González-Mercado, 402 F.3d 294, 302 (1st Cir. 2005); Antonakopoulos, 399 F.3d at 75.  The Booker error that transpired here constitutes a clear and obvious sentencing error; thus, the first two prongs of the plain error test are satisfied.  See United States v. Martins, ___ F.3d ___, ___ (1st Cir. 2005) [No. 04-1474, slip op. at 26]; Antonakopoulos, 399 F.3d at 75.

Turning to the third prong, we must inquire whether the appellant has pointed to circumstances creating a reasonable probability that the district court would have levied a more

lenient sentence had it not been constrained by the then-mandatory guidelines system. We have said that we will not be overly stringent in assessing a defendant's attempt to make that showing. See Heldeman, 402 F.3d at 224. Still, the defendant must point to something concrete, whether or not in the sentencing record itself, that provides a plausible basis for such a finding.[1]

The appellant essays two arguments in support of a finding of prejudice. He first notes that a district court, post-Booker, is required to account for all the factors enumerated in 18 U.S.C. § 3553(a).[2] See Booker, 125 S. Ct. at 764-67. Building on

---

[1]The government relies heavily on the district court's remarks at the original sentencing (in 1996) to reflect the court's attitude (and, thus, the likelihood of a lower sentence). In ordinary circumstances, that information would be relevant. Here, however, the district court subsequently found that the appellant's counsel at the original sentencing hearing was constitutionally ineffective in presenting the appellant's side of the story. See Guzmán, No. 98-12086, slip op. at 1. Because the court's ability to assess the situation was compromised at that time, we think that the course of prudence is to refrain from attributing any significance to the court's 1996 comments.

[2]These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for — (A) the applicable category of offense committed by the

-10-

this foundation, he posits that his sentence "would have looked quite different" had this been done.

This argument misapprehends a defendant's burden on plain error review. It is not enough for a defendant to show that he was not given the benefit of a sentence fashioned under advisory guidelines; rather, he must offer some reasonable indication that the sentencing court, freed of the shackles forged by mandatory guidelines, would have fashioned a more favorable sentence. See Heldeman, 402 F.3d at 224; Antonakopoulos, 399 F.3d at 75. Therefore, the inherent uncertainty about how the sentencing court would have exercised its newfound discretion when weighing the section 3553(a) factors under an advisory guidelines system is not enough to enable a defendant to carry his burden.

That reality disposes of the appellant's argument. While he describes at some length the vistas that the district court is now permitted to explore, he points to no specific circumstances signaling that the court's deliberations with respect to the section 3553(a) factors would likely have yielded a lower sentence. Thus, his argument falls short of passing the third prong of the plain error test.

---

applicable category of defendant as set forth in the guidelines . . .; (6) the need to avoid unwarranted sentence disparities among defendants with similar records . . .; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The appellant next contends that had the district court sentenced him under an advisory guidelines system, it probably would have given him a lower sentence based on the poverty and the difficulties with cultural assimilation that he faced as a child, his current family circumstances, and the likelihood that he will be deported upon the completion of his sentence. In support of this contention, the appellant cites the fact that the district court sentenced him at the bottom of the applicable guideline range and argues that the court might have granted a further reduction had it not been constrained by a mandatory guidelines system.

The fact that the district court imposed a sentence at the bottom of the guideline sentencing range, standing alone, does not give rise to a reasonable probability that, under advisory guidelines, it would have imposed a sentence lower than what the guidelines prescribed. See United States v. Figuereo, 404 F.3d 537, 542 (1st Cir. 2005); United States v. Cacho-Bonilla, 404 F.3d 84, 95 (1st Cir. 2005); United States v. Serrano-Beauvaix, 400 F.3d 50, 55 (1st Cir. 2005). A defendant who is sentenced at the bottom of the guideline range must show some additional basis for a finding that the district court would have been inclined to disregard the range and sentence below it. See Figuereo, 404 F.3d at 542; Serrano-Beauvaix, 400 F.3d at 55.

The appellant has failed to make such a showing. He alludes several times to a comment made by the district court

-12-

during the resentencing, but that comment is ambiguous at best.[3] While the appellant reads this statement to indicate the court's view that the drug laws are the source of "terrible human consequences" and to signal the court's sympathy for the fact that the appellant will spend so much time apart from his family, an equally plausible interpretation is that the court was expressing its belief that "terrible human consequences" result from "people in this country dealing drugs" (such as the appellant). In all events, this generalized, matter-of-fact statement about the consequences of drug crimes does not indicate that the court felt that the appellant, given his individualized circumstances, deserved a lesser sentence. Thus, we cannot conclude that the statement furnishes the missing link and gives rise to a reasonable probability that the district court, under an advisory guidelines system, would have been inclined to impose a more lenient sentence.

To cinch matters, we note that the court's statements in refusing to grant the appellant's requests for downward departures at the time of resentencing are suggestive of the fact that the court deemed the case quite ordinary. Referring to the appellant's

_____

[3]The court stated:

Of course, none of us would be here if you hadn't been in this country dealing drugs, and the drug laws in this country provide for long sentences in cases like yours, and it does have terrible human consequences. I know that you really do miss all those people, including those that you mentioned today.

-13-

familial circumstances, the court stated that there was "no evidence supporting the claim that his family relationship [was] unique or extraordinary." Guzmán, No. 98-12086, slip op. at 43. The court further found the appellant's arguments relating to the difficulties of cultural assimilation to be utterly unpersuasive. Id. at 44. And, finally, the court discerned nothing about the appellant's forecasted deportation that would "take [the appellant's] situation outside of the ordinary." Id. These responses indicate that the court was not moved by the circumstances of the case and strongly suggest that the court would have had little inclination to reduce the 210-month sentence. See Martins, ___ F.3d at ___ [slip op. at 26-27].

To sum up, the appellant committed a serious offense. The record indicates that he was at ease in his role as a drug dealer who peddled substantial volumes of crack cocaine. There is nothing in the record to suggest any hesitation or discomfiture on the district court's part in meting out a 210-month sentence. It follows that the appellant has failed to carry his burden of showing prejudice tied to the use of a mandatory guidelines regime.

We need go no further. Our standard plain error test applies to the appellant's unpreserved claim of Booker error. Because the appellant has not demonstrated a reasonable probability that he would have received a lower sentence under an advisory guidelines system, he fails that test.

-14-

**<u>The appellant's sentence is affirmed</u>**.