# United States Court of Appeals
## For the First Circuit

No. 03-1177

UNITED STATES OF AMERICA,

Appellee,

v.

KENNY MATEO-ESPEJO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin and Cyr, Senior Circuit Judges.

Jeffrey L. Baler on brief for appellant.
Robert Clark Corrente, United States Attorney, and Donald C.
Lockhart and Kenneth P. Madden, Assistant United States Attorneys,
on brief for appellee.

October 21, 2005

**SELYA**, **Circuit Judge**. Defendant-appellant Kenny Mateo-Espejo pleaded guilty to charges of conspiracy to distribute more than fifty grams of crack cocaine, see 21 U.S.C. §§ 841(a)(1), 846, and distribution of that amount of crack cocaine, see id. § 841(a)(1). He now appeals his sentence. Concluding, as we do, that the district court committed no reversible error in the course of sentencing, we affirm the judgment below.

## I. BACKGROUND

Because this appeal follows a guilty plea, we draw the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the transcript of the disposition hearing. United States v. Brewster, 127 F.3d 22, 24 (1st Cir. 1997); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

On March 14, 2002, Leopold Weeks, alleged to be the appellant's coconspirator, accepted $3,000 as a down payment for the sale of 250 grams of cocaine base (colloquially known as crack cocaine). At the appointed time, Weeks and the appellant went to meet the prospective purchaser. The appellant removed 247.04 grams of crack cocaine from his pocket and delivered it to the buyer. Five days later, the appellant met with the buyer and collected the balance of the purchase price ($3,600). The buyer proved to be an undercover police officer, so arrests and an indictment soon followed.

After twice switching counsel, the appellant entered a guilty plea on August 13, 2002 (the day that jury empanelment was to occur). The PSI Report, which the appellant received on November 5, 2002, recommended a base offense level of 34, see USSG §2D1.1(a)(3), and a two-level downward adjustment for acceptance of responsibility, see id. §3E1.1(a).[1] The appellant's only objection to the PSI Report was to the absence of an additional level in the credit for acceptance of responsibility. See id. §3E1.1(b). Because the appellant had not yet met with the authorities — he did not participate in a debriefing until the day before sentencing — the PSI Report did not recommend a so-called "safety valve" reduction. See id. §2D1.1(b)(6).

At the disposition hearing, the district court, with obvious reluctance, granted the two-level safety valve adjustment. The court also bestowed a two-level reduction for acceptance of responsibility, but declined to award an additional one-level reduction. Midway through the hearing, the appellant for the first time asserted an entitlement to a minor role adjustment, see id. §3B1.2(b), but the court rebuffed that initiative. These rulings yielded a total offense level of 30 which, combined with a criminal

---

[1] We refer throughout this opinion to the November 2002 edition of the sentencing guidelines. See United States v. Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. 1990) (explaining that, absent ex post facto concerns, the version of the sentencing guidelines in effect on the date of sentencing controls). That point is of more than academic interest, as the contours of USSG §3E1.1(b) have changed materially.

history category of I (the appellant had no prior criminal record), produced a guideline sentencing range (GSR) of 97-121 months. The court, albeit grudgingly, acquiesced in the government's recommendation and sentenced the appellant to a 97-month incarcerative term. This timely appeal ensued.

## II.  ANALYSIS

In this venue, the appellant advances three claims of error. He maintains that the sentencing court erred (i) in refusing to grant him an additional one-level reduction for acceptance of responsibility; (ii) in failing to find that he played only a minor role in the offenses of conviction; and (iii) in sentencing him contrary to the mandate of United States v. Booker, 125 S. Ct. 738 (2005). We discuss these claims in sequence.

### A.  Acceptance of Responsibility.

We begin with the sentencing court's refusal to grant an additional one-level reduction for acceptance of responsibility. "A defendant bears the burden of proving entitlement to decreases in the offense level, including downward adjustments for acceptance of responsibility." United States v. Morillo, 8 F.3d 864, 871 (1st Cir. 1993). Where, as here, the district court has ruled adversely on such an issue, the ruling will be set aside only if it is shown to be clearly erroneous. United States v. Royer, 895 F.2d 28, 29 (1st Cir. 1990). The appellant has not made such a showing.

-4-

A defendant who accepts responsibility for his criminal conduct normally receives a two-level discount in his offense level. See USSG §3E1.1(a). To qualify for an additional one-level reduction, the defendant must either: timely provide complete information to the government anent his own involvement in the offense(s) of conviction or, at least, timely notify the authorities of his intention to plead guilty. Id. §3E1.1(b). The guidelines offer this second avenue as a means of "permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently." Id.

The first of these routes is not available to the appellant. He did not discuss the details of the offenses of conviction with the government until the day before his scheduled sentencing. That hardly can be considered a timely provision of complete information to the government. See, e.g., United States v. Brack, 188 F.3d 748, 765 (7th Cir. 1999) (finding no timely provision of complete information when defendant was not debriefed until four days before trial).

The second avenue also proves to be a dead end. The district court regarded the appellant's eleventh-hour decision to plead guilty, made on the day of jury empanelment, as failing to satisfy the applicable criterion. That determination was not clearly erroneous.

Although this case was not a complicated one, the government needed some time to prepare for trial — and the timing of the appellant's change of plea meant that the government's preparation had largely been done. Equally as important, the appellant's belated decision wasted judicial resources; jurors had been summoned unnecessarily and the court's calendar had been cleared to accommodate a trial that never took place. A timely decision on the appellant's part would have ameliorated these problems, saving the government a significant portion of its trial preparation expenses and allowing the court to husband judicial resources. Under these circumstances, denying the additional one-level discount was not clearly erroneous. See, e.g., Morillo, 8 F.3d at 872 (finding no clear error in denial of additional one-level reduction when defendant waited until the day of jury selection to enter a guilty plea); United States v. Donovan, 996 F.2d 1343, 1345 (1st Cir. 1993) (per curiam) (finding no clear error in denial of additional one-level reduction when defendant waited until the eve of trial to plead guilty).

The appellant makes a last-ditch effort to salvage his acceptance of responsibility argument: he asserts that his change of counsel caused the delay in notifying the government of his intent to change his plea and that withholding the extra level of credit infringes upon the exercise of his constitutionally assured right, under the Sixth Amendment, to counsel of his choosing. We

agree with a portion of the appellant's underlying premise, but in the end, we find his argument unpersuasive.

The point of agreement is that a district court may properly consider the right to effective assistance of counsel in determining if a defendant qualifies for the additional one-level reduction under section 3E1.1(b). See, e.g., United States v. Altier, 91 F.3d 953, 958 (7th Cir. 1996). On the facts of this case, however, the conclusion that the appellant would have us draw does not follow from this premise. Nothing in the record indicates that the timing of the appellant's decision to plead guilty had anything to do with switching from one lawyer to another. Indeed, the appellant does not even attempt to explain how changing counsel impacted his decision to abjure a trial.

In all events, the district court gave careful attention to this plaint. The court found it meritless, noting that the appellant may have had a more plausible argument if, shortly before he changed his plea, he had switched from appointed counsel to retained counsel. Yet, that was not the scenario here; the appellant's original attorney was court-appointed but rapidly replaced by a privately retained attorney, and the shuffling to which the appellant points is the replacement of that attorney with yet another privately retained attorney. The district court found that the appellant's decision to jettison one retained lawyer in favor of another, without more, did not create a Sixth Amendment

-7-

impediment to the withholding of the additional one-level reduction. On the record before us, that finding was not clearly erroneous.

## B. **Role in the Offense**.

We turn next to the appellant's claim that he should have received a two-level reduction for his minor role in the offenses of conviction. The government argues plausibly that the appellant either waived or forfeited this claim of error because he failed to object to the PSI Report within the prescribed period. See Fed. R. Crim. P. 32(f); D.R.I. R. 40.2(a). Giving the appellant the benefit of every doubt, we assume, for argument's sake, that the claim was properly preserved. On that basis, appellate review is for clear error. United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995).

A defendant who seeks a downward adjustment stemming from his supposedly peripheral role in the offense bears the burden of proof on that issue. United States v. Ocasio, 914 F.2d 330, 332-33 (1st Cir. 1990). To qualify for a minor role reduction under USSG §3B1.2(b), the defendant must satisfy a two-pronged test. First, he must demonstrate that he is less culpable than most of those involved in the offenses of conviction. See United States v. Santos, 357 F.3d 136, 142 (1st Cir. 2004); Ocasio, 914 F.2d at 333. Second, he must establish that he is less culpable than most of

those who have perpetrated similar crimes.  See Santos, 357 F.3d at 142; Ocasio, 914 F.2d at 333.

In an effort to satisfy the first prong, the appellant asserts that Weeks was the ringleader — the person who arranged the transaction — while he (Mateo-Espejo) was merely a courier.  This assertion lacks force.  Although the appellant may not have arranged the initial meeting, he transported a large amount of crack to the delivery site, played a significant role in the culmination of the sale, and met again with the buyer (this time, without Weeks) to collect the unpaid balance of the purchase price.  Based on these facts, the district court found that the appellant was not substantially less culpable than his coconspirator (and, thus, not a minor participant).

That finding demands our fealty.  After all, this court repeatedly has upheld the denial of downward role-in-the-offense adjustments for defendants who have been no more involved in drug transactions than the appellant.  For example, in United States v. Ortiz-Santiago, 211 F.3d 146 (1st Cir. 2000), we descried no clear error in the sentencing court's denial of a minor role adjustment where the defendant had performed only "menial tasks" such as unloading the drugs and conducting surveillance.  Id. at 149.  So too in United States v. Gonzalez-Soberal, 109 F.3d 64 (1st Cir. 1997), we discerned no clear error in the sentencing court's denial of a downward role-in-the-offense adjustment on the assumption that

the defendant had been no more than a courier. Id. at 73-74. And in United States v. Cepeda, 907 F.2d 11 (1st Cir. 1990), we found no clear error in the sentencing court's denial of a minor role adjustment where, as here, the defendant delivered drugs and collected money. Id. at 12. Silhouetted against this precedential backdrop, the decision of the court below denying the appellant's request that he be classified as a minor participant cannot be characterized as clearly erroneous. Cf. United States v. González, 363 F.3d 15, 18 (1st Cir. 2004) (per curiam) ("Even if [defendant's] role were limited to that of driver, that would not necessarily, without more, prove that he deserved a role adjustment.").

## C. **Booker Error**.

In Booker, the Supreme Court held that a defendant's Sixth Amendment right to trial by jury is violated when his sentence is imposed under a mandatory guidelines system that gives decretory significance to judge-found facts. 125 S. Ct. at 756. The appellant notes that he was sentenced prior to the Booker decision and under the mandatory guidelines system then in effect. Building on this foundation, he maintains that his sentence is tainted by Booker error.

The appellant did not make a Sixth Amendment objection at the time of sentencing, so this claim of error is unpreserved. Consequently, our review is for plain error. United States v.

Guzmán, 419 F.3d 27, 30 (1st Cir. 2005); United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005). To cross that threshold, the appellant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

In this instance, the lower court, operating in accordance with the pre-Booker norm, treated the guidelines as mandatory. Thus, the first two elements of the plain-error formulation are present here. See Antonakopoulos, 399 F.3d at 77.

To satisfy the third element, the appellant must demonstrate a reasonable probability that he would have received a lesser sentence under an advisory guidelines regime. See Guzmán, 419 F.3d at 30; Antonakopoulos, 399 F.3d at 75. Although we are not overly demanding in our assessment of a defendant's attempt to make this showing, see United States v. Heldeman, 402 F.3d 220, 224 (1st Cir. 2005), we do require "something concrete, whether or not in the sentencing record itself, that provides a plausible basis for such a finding," Guzmán, 419 F.3d at 32.

The appellant first suggests that there are factors present here that the sentencing court, under a mandatory guidelines system, was unable to consider when passing sentence and that, under an advisory guidelines system, these factors would have

-11-

led to a milder sentence. In this regard, the appellant, who was twenty-three years of age at the time of sentencing, mentions his youth and his significant familial responsibilities. While the district court did not allude to either of these factors at sentencing, the appellant attributes the court's silence to the prohibitory language of the now-discredited mandatory guidelines system. See USSG §5H1.1 (directing that age ordinarily should not be deemed relevant in determining whether a sentence should be imposed outside the applicable GSR); id. §5H1.6 (same, with respect to family circumstances).

It is, of course, possible that a judge might reserve comment on a matter because he thought that the mandatory nature of the sentencing guidelines rendered comment futile. Here, however, the district court, fully apprised by the PSI Report of the appellant's age and family responsibilities, went out of its way to indicate its reluctance to impose the low-end sentence that the government strongly recommended. The court stated, in no uncertain terms, that it did not see "any reason" for a sentence at the bottom of the GSR, "except for the government's recommendation." These statements are a powerful indication that the court was unpersuaded that the factors limned in the PSI Report counseled in favor of leniency. In the last analysis, the colloquy in the record, taken as a whole, neither suggests nor supports a

reasonable probability that the court would have imposed a sentence outside the GSR under an advisory guidelines regime.

The appellant has another string to his bow. He asseverates that there were other circumstances, not mentioned in the PSI Report, that would have led the court to impose a more lenient sentence. We reject this asseveration.

The first circumstance to which the appellant alludes is the disparity between his 97-month sentence and Weeks's 70-month sentence. A well-founded claim of disparity, however, assumes that apples are being compared to apples. Here, there is no true disparity; differences between the appellant's belated and grudging cooperation and Weeks's prompt and full cooperation sensibly account for the differing sentences. On a practical level, it would seem patently unreasonable to endorse a regime in which a defendant could steadfastly withhold cooperation from the authorities and then cry foul when a coconspirator benefits from rendering substantial assistance to the government.

The only other "new" circumstance to which the appellant adverts is his claim that he committed the crimes because he needed money to provide for an ailing grandmother and parents who were being evicted from their home. This line of defense did not work for Jean Valjean, cf. Victor Hugo, Les Misérables (Norman Denny trans., Penguin Books 1982) (1862), and we see no basis for a reasonable expectation that it would have worked here. After all,

the sentencing court was aware of the appellant's familial obligations and it said nothing that might lead to a well-founded belief that those obligations ought to impact the length of the sentence. That silence, combined with the court's avowed reluctance even to give the appellant a sentence at the bottom of the GSR, leads to the conclusion that the appellant has failed to demonstrate a reasonable probability that the Booker error had a prejudicial effect in this case. See, e.g., United States v. Martins, 413 F.3d 139, 154 (1st Cir. 2005); United States v. Vega Molina, 407 F.3d 511, 534 (1st Cir. 2005).

Because the appellant has not shown a reasonable probability that the lower court would have imposed a more lenient sentence under an advisory guidelines system, we reject his Booker challenge.

## III. CONCLUSION

We need go no further. The court below did not err in calculating the applicable GSR. It did, of course, commit Booker error, but that unpreserved error was not prejudicial (and, therefore, was not plain). Accordingly, there is no justification for disturbing the appellant's sentence.

**Affirmed**.

-14-