[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-13708
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 14, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00023-CR-FTM-29DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EUGENIO GARZA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(March 14, 2007)**

Before BIRCH, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Eugenio Garza appeals his 151-month sentence for conspiracy to possess

with intent to distribute 500 or more grams of cocaine. Garza argues that the district court erred because: (i) his sentence was unreasonable under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005); and (ii) it was above the statutory maximum as recognized by Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), thereby violating the Ex Post Facto Clause. Garza also argues for a sentence below the applicable guideline range based on the factors in 18 U.S.C. § 3553(a), specifically, Garza's personal history and the disparity in the sentences compared to those of Garza's co-conspirators. We AFFIRM.

## I. BACKGROUND

A federal grand jury indicted Garza on one count of conspiracy to possess 500 grams or more of cocaine, with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), and 846. The indictment alleged that the conspiracy began on or about March 2002 and concluded on or about 4 December 2002. After a trial, the jury found Garza guilty of the charged offense conduct.

In December 2002, the Florida Highway Patrol ("FHP") arrested Julio Sanchez when they found him in possession of approximately four kilograms of cocaine. Sanchez confessed to the FHP that he was transporting the cocaine for Garza and planned to deliver it to Felix Gonzalez and Guadalupe Maldonado. Gonzalez and Maldonado informed the FHP that, from April 2002 until December

2

2002, they had bought approximately five to six kilograms of cocaine from Garza.

The probation officer calculated Garza's base offense level using U.S.S.G. § 2D1.1(c)(4) and recommended a base offense level of 32, based on the fact that the conspiracy involved at least 5 kilograms of cocaine. With an offense level of 32 and a criminal history category of I, the probation officer calculated that Garza's guideline imprisonment range was 121 to 151 months.

At Garza's initial sentencing hearing, the probation officer did not suggest a role enhancement under U.S.S.G. § 3B1.1(c) in the original PSI. After hearing argument for an enhancement by the government, however, the court imposed a two-level role enhancement to Garza's base offense level. The court found that Garza's offense level was 34, his criminal history category was I, and his resulting guideline imprisonment range was 151 to 188 months. Garza argued for a sentence at the low end of the guideline range, based upon his personal characteristics and the sentence disparity with his co-conspirators, of whom Sanchez received a 70-month federal sentence and the other two, Maldonado and Gonzalez, each received a state sentence of probation. Before imposing the sentence, the court noted that, although it was not allowed to consider disparity in sentences under the then-mandatory guideline system, there was a "tremendous disparity" between the sentences of Gonzalez and Maldonado and the range for Garza. R10 at 57. The

3

court then imposed a sentence of 151 months' imprisonment, and Garza appealed his sentence.

In Garza's first appeal, we held that the district court did not err in its factual findings with respect to drug quantity and leadership-role enhancement. See United States v. Garza, 172 Fed. Appx. 983, 991-92 (11th Cir. 2006) (per curiam) (unpublished). We then affirmed the district court's factual findings in connection with sentencing, but vacated and remanded for resentencing consistent with Booker. Id. at 992.

At the resentencing hearing, Garza first objected that, under Blakely, his statutory maximum should be limited to the facts found by a jury, which in this case was 500 grams of cocaine. Garza argued that, based on this drug quantity, his statutory maximum sentence was at the high end of the applicable guideline range of 78 months of imprisonment. Because, as Garza conceded, Eleventh Circuit case law rejected his argument, the district court overruled that objection.

The district court adopted the factual statements and the application of the guidelines as stated in the PSI, which included the leadership-role enhancement from the initial sentencing hearing. The court thus found that the applicable guideline imprisonment range was 151 to 188 months. Garza argued that, under the factors in 18 U.S.C. § 3553(a), the court should impose a sentence below the

4

applicable guideline imprisonment range. First, Garza argued that his personal characteristics–specifically, working since he was 12 or 13-years old to support his family, being married to the same person for 14 years, and having no prior criminal history except a misdemeanor for leaving the scene of an accident–warranted a lower sentence. Garza also pointed out that he had passed the General Education Development test while in prison. Second, Garza argued that the disparity in sentences between him and his co-conspirators warranted a lower sentence. Specifically, Garza contended that two co-conspirators, Maldonado and Gonzalez, were more culpable and had only received state sentences of probation, and another, Sanchez, had only received a federal sentence of 70 months of imprisonment.

The government responded that Garza's work history should not be used in his favor because he used his work as a truck driver to carry out his illegal activities. As to the disparity in sentencing, the government contended that Sanchez was held accountable for the same quantity of drugs as Garza, but that Sanchez pleaded guilty and received a three-point reduction for acceptance of responsibility and a two-point safety-valve reduction under U.S.S.G. § 5C1.2. Thus, the government argued that Sanchez's base offense level was 5 points lower than Garza's level and his applicable imprisonment range was 70 to 87 months.

5

The government also contended that Maldonado and Gonzalez should not be compared because they were sentenced in state court, and, moreover, they both pleaded guilty and cooperated with the state.

The court found that none of Garza's arguments warranted a departure below the applicable guideline range. The court first found that the fact that Garza passed the GED test while in prison did not warrant a lower sentence. The court also found that Garza's work history did not weigh in his favor because he used his work as a cover for delivering cocaine. As to the disparity in sentencing, the court found that it could compare the state sentences, but found that the sentences imposed on Maldonado and Gonzalez were not "particularly relevant or significant." R11 at 42. The court found that although Sanchez was "more similarly situated," Sanchez testified and received safety-valve and acceptance of responsibility reductions. Id. The court noted that none of these reductions applied to Garza and that he also had received a role enhancement. The court then imposed a sentence of 151 months of imprisonment, which was at the low end of the applicable guideline range. The court explained that it imposed a sentence at the low end because the sentence would "not undermine the sentencing factors of the sentencing guidelines, and, under the facts of the case, the low end [was] appropriate." Id. at 51. The court noted that it had considered all the factors under

6

§ 3553(a).

## II. DISCUSSION

After the Supreme Court's opinion in Booker, we review sentences for

reasonableness, with the Guidelines applied as advisory. United States v. Talley,

431 F.3d 784, 785 (11th Cir. 2005) (per curiam). The district court must follow a

two-step process to determine a defendant's sentence by (1) consulting the

Guidelines and correctly calculating the Guideline range, and (2) considering the

factors under 18 U.S.C. § 3553(a). Id. at 786. As to the Guidelines calculation,

"[w]e review a district court's factual findings for clear error and its application of

the Guidelines de novo. United States v. Moriarty, 429 F.3d 1012, 1021 (11th Cir.

2005) (per curiam) (quotation omitted).

The factors in § 3553(a) include the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

Talley, 431 F.3d at 786 (citing 18 U.S.C. § 3553(a)). Relevant to this appeal, the

specific factor discussing sentence disparity states that the sentencing court should

7

consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

"[N]othing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). We noted in Scott that the defendant argued at length about the factors and that the district court explicitly acknowledged that it had considered the § 3553(a) factors. Id. at 1329-30. Although we have rejected a per se rule, we have explained that a sentence within the applicable guideline range has the expectation that the sentence is reasonable. Talley, 431 F.3d at 788. Review for reasonableness is deferential, and there are a range of sentences that are reasonable. Id. The party who challenges the sentence has the burden of proving that the sentence is unreasonable in light of the record and the § 3553(a) factors. Id.

Garza argues that his sentence was procedurally unreasonable because the court failed to address his disparity-in-sentencing argument. Garza further contends that, because the court sentenced him inside the applicable guideline range, it did not consider a sentence outside that range. (Id. at 20). Garza then argues that his sentence was substantively unreasonable because the court did not

8

weigh the § 3553(a) factors properly. (Id. at 21-30). Specifically, Garza contends that his nature and circumstances, specifically his work history, education, marital status, and criminal history, militate in favor of a lower sentence. Also, Garza argues that the sentence disparities between his sentence and the 70-month federal sentence for Sanchez and the state sentences of probation for Maldonado and Gonzalez weigh toward a lower sentence. Garza further contends that the court gave undue weight to the applicable guideline range. Last, Garza argues that the need for specific and general deterrence warrants a lower sentence. (Id. at 28-30).

Here, the district court did not impose an unreasonable sentence. The court specifically considered Garza's personal history and the disparity in sentences. See 18 U.S.C. § 3553(a)(1) and (6). Furthermore, the court considered the available sentences and consulted the Guidelines. See 18 U.S.C. § 3553(a)(3) and (4). The court sentenced Garza within the applicable guideline range, in fact, at the low end, which carries at least an expectation of reasonableness. See Talley, 431 F.3d at 788. As to Garza's argument that his sentence was disparate, the other defendants were not similarly situated. Congress has specifically instructed sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). "The guidelines, structured to account for relative culpability and

9

differences in prior records of defendants, demonstrate that the Sentencing Commission fully anticipated sentencing disparity between defendants involved in the same offense." United States v. Chotas, 968 F.2d 1193, 1197 (11th Cir. 1992) (per curiam). Other co-defendants pled guilty and cooperated with the government. Garza directed Sanchez's participation in the offense and Sanchez received a safety valve reduction and a reduction for his acceptance of responsibility, all of which are different from Garza's situation. See, e.g., United States v. Pisman, 443 F.3d 912, 916 (7th Cir. 2006) (disparity with co-defendant who cooperated and received substantial assistance departure not "unwarranted" under § 3553(a)(6)); United States v. Mateo-Espejo, 426 F.3d 508, 514 (1st Cir. 2005), cert. denied, 126 S. Ct. 1414 (2006) ("A well-founded claim of disparity . . . assumes that apples are being compared to apples. Here, there is no true disparity; differences between the appellant's belated and grudging cooperation and [his co-defendant's] prompt and full cooperation sensibly account for the differing sentences."). Therefore, the district court properly considered this factor and found that it did not militate in favor of a sentence below Garza's applicable guideline range. Accordingly, because the district court considered the § 3553(a) factors and Garza's arguments and we are not "left with the definite and firm conviction that the district court committed clear error of judgment in weighing the §3553(a)

10

factors," we hold that his sentence was reasonable. See United States v. Williams, 456 F.3d 1353, 1363 (11th Cir. 2006).

As to Garza's Blakely argument, in United States v. Duncan, 400 F.3d 1297, 1307-08 (11th Cir.), cert. denied, 126 S. Ct. 432 (2005), we held that the statutory maximum sentence is found in the applicable United States Code, and therefore, there is no ex post facto or due process violation by the application of Booker to make the Guidelines retroactively advisory. Accordingly, the district court did not err in applying this case law. To the extent Garza argues that we should reverse our prior decision, "[t]he law of this circuit is 'emphatic' that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision." Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997) (citation omitted).

### III. CONCLUSION

After careful review of the record and the parties' briefs, we hold that the district court did not impose an unreasonable sentence and there was no ex post facto violation. Garza's sentence is **AFFIRMED.**