[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-13026

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOHN CORY MORRISON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cr-00090-KKM-AEP-1

_____

Before JILL PRYOR, BRANCH, and ABUDU, Circuit Judges.

PER CURIAM:

John Cory Morrison appeals his total sentence of 132 months' imprisonment for possession with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and the knowing possession of a firearm and ammunition as a felon, in violation of 18 U.S.C. §§ 922(g)(1), and 924(a)(2). On appeal, Morrison argues that the district court imposed a substantively unreasonable total sentence. After careful review, we affirm.

## I.    FACTS AND PROCEDURAL HISTORY

Morrison and a co-defendant, Jonathan Thuemler, were charged with possession with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) ("Count 1"). In separate counts, Morrison ("Count 2") and Thuemler ("Count 3") were each also charged with the knowing possession of a firearm and ammunition as a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Morrison later pled guilty without a written plea agreement.

A probation officer prepared a presentence investigation report ("PSI"), which reported the following facts.

In February 2023, officers in Pasco County, Florida, stopped a pick-up truck that Thuemler was driving. Morrison was a passenger in the front seat. An officer saw a handgun between the driver's seat and the center console. Officers searched the truck

and they found, among other things, a digital scale, a straw with fentanyl residue, 123 fentanyl pills, and 3.840 grams of methamphetamine hydrochloride. Morrison admitted that he had a gun, and officers retrieved a loaded gun from his waistband. Officers also searched Morrison's and Thuemler's room at a nearby hotel where they found 2,009 fentanyl pills, about 19.6 pounds of marijuana, 107 doses of suspected steroids, a pistol case, and two magazines, one of which contained ammunition.

After his arrest, Morrison admitted that he was a felon and that he had an outstanding warrant for a parole violation. He explained that he had recently driven from Oregon to Florida with Thuemler and that, while he was in Oregon, he had sold fentanyl pills and received about $250,000 worth of fentanyl pills and 30 to 40 pounds of methamphetamine from his supplier, who was also Thuemler's supplier.

The PSI calculated that Thuemler and Morrison were responsible for 235.751 grams of fentanyl, 3.80 grams of methamphetamine, and 19.6 pounds of marijuana.

The PSI also reported various personal and family information about Morrison. Growing up, Morrison lived with his mother and stepfather, who both sold marijuana and methamphetamine to feed their substance addictions and to financially support the family. At eight years old, Morrison began smoking marijuana daily. When his mother caught him stealing her marijuana to sell it at school, she sent him to live with his father, and she stopped speaking to Morrison until he was 18 years old. While Morrison

lived with his father, his father abused prescription pain medication and severely physically and emotionally abused Morrison. At age 16, Morrison left his father's home after his father put a gun to his head and threatened to kill him. For around two years, Morrison was essentially homeless until his mother asked him to return to Oregon. Though Morrison's mother promised to support him financially and emotionally when he moved back, she failed to do so.

The PSI reported that Morrison had a lengthy history of drug use and drug dependency. In addition to his daily use of marijuana at age 8, he began using prescription pain medication at age 12 and continued using it daily until he was 22 years old; he used methamphetamine first around age 18 or 19 and began using it daily in his early 20s; and he regularly used other substances, including MDMA, fentanyl, and cocaine. The day after he was arrested, Morrison tested positive for amphetamine, methamphetamine, marijuana, and fentanyl. Though he acknowledged that he had substance abuse issues, he had never received treatment. He also had never received any mental health treatment.

The PSI also summarized Morrison's prior criminal history. As relevant, it explained that—after convictions at age 18, 19, and 22—he had been convicted in Oregon state court for unlawful possession of heroin at age 23. At 24, he was convicted in Florida state court of unlawful possession of methamphetamine and interfering with a peace officer. That same year, he was convicted of attempted delivery of a counterfeit substance in Oregon.

At 25, Morrison pled guilty in Oregon to charges of attempted arson, burglary, and criminal mischief. The indictment underlying those convictions stated that, as to the burglary charge, Morrison threatened physical injury to another person. An affidavit that law enforcement prepared during the prosecution of that case indicated that Morrison "kicked in the front door of the residence" and "lit a cardboard box on fire and then placed the burning box on top of some clothes." Morrison then left the residence, stating that he would be back with gasoline to finish burning it down.

In 2017, at the age of 27, Morrison was convicted in Oregon state court of criminal mischief. At 28, Morrison was convicted in Oregon state court of attempted robbery, attempted assault, unauthorized use of a vehicle, and identity theft. The indictment underlying that conviction alleged that Morrison had used and threatened the use of physical force upon a victim while committing theft and that he caused physical injury to the victim by using a dangerous weapon. The criminal affidavit report underlying those charges alleged that Morrison struck a victim and caused him to lose consciousness. While the victim was unconscious, Morrison continued kicking him and, after he regained consciousness, Morrison demanded his wallet and debit card PIN and stole his car. The victim sustained a concussion and a laceration to his head caused by blunt force trauma. Morrison was on parole for these offenses at the time of the instant offense, and the PSI noted that his parole violation warrant remained outstanding. Based on the facts of his

conviction and his criminal history, the PSI calculated Morrison to have a guideline imprisonment range of 110 to 137 months.[1]

Morrison filed a sentencing memorandum, requesting a downward variance based on the factors in 18 U.S.C. § 3553(a) and a total sentence of 84 months' imprisonment. He argued that his personal characteristics, including genetic and environmental factors such as family members who abused substances, parental approval of drug use, poor parental monitoring, and easy availability of drugs, all played a role in developing his drug addiction. He explained that he had undergone a psychological assessment and that he had been diagnosed with severe stimulant (methamphetamine) use disorder, severe cannabis use disorder, severe opiate use disorder, major depressive disorder, and generalized anxiety disorder. He noted that he had lacked parental support and emotional support, and had been surrounded by peers who used substances, all of which increased his drug use and depression. He also asserted that he had accepted responsibility for his conduct. In sum, Morrison argued that his long battle with mental illness, his history of substance abuse, and his other mitigating characteristics justified an 84-month sentence.

The government requested a 135-month total sentence. It highlighted that Morrison and his co-defendant had brought "thousands" of fentanyl pills to Florida to sell them and make money. It

---

[1] The PSI also noted that the maximum term of imprisonment for a violation of 21 U.S.C. § 841(b)(l)(B) was 480 months, and the maximum term of imprisonment for 18 U.S.C. § 924(a)(2) was 120 months.

acknowledged that Morrison had "a personal history of trauma and substance abuse," but noted that he "also ha[d] an established history of violence and harm to others" as evidenced by the facts in the PSI. Based on his history, the government argued that Morrison was a threat to public safety who had disregarded the law and court orders. It asserted that a 135-month sentence would be reasonable and would reflect the directives in 18 U.S.C. § 3553.

At sentencing, the parties confirmed that there were no objections to the PSI. Thus, the district court adopted, without objection, the PSI's factual findings and its guidelines calculations, which showed that Morrison's total offense level was 25, his criminal history category was VI, and his guideline range of imprisonment was 110 to 137 months' imprisonment. The district court noted, however, that the Guidelines were advisory and explained that it would give the government and Morrison an opportunity to argue what would be an "appropriate sentence."

The government opposed Morrison's request for a downward variance and sought a 135-month total sentence. It contended that aggravating § 3553(a) factors outweighed the mitigating factors Morrison had put forth. It explained that Morrison had a pattern of committing crimes, including violent ones, and that Morrison could have obtained financial gain from distributing the 2,000 fentanyl pills which, in turn, could have led to people's deaths. It also noted that Morrison's use of a firearm was an aggravating factor. It recognized that Morrison had experienced a lot of "strife" in his life and had "mental health concerns and substance

abuse" issues that were mitigating, but it reiterated its contention that he posed a risk to the community and argued that denying a downward variance would prevent further "criminal escapades."

Morrison, in turn, reiterated his request for a downward variance. He noted that the PSI explained that he had been struggling with drug addiction for 25 years, starting at the age of 8, and that his drug addiction had altered his brain chemistry. He also emphasized that he had cooperated with the government and had taken responsibility for his crimes. He conceded that he possessed a lot of fentanyl, but noted that many of the pills would have been for his personal use because of the extent of his addiction. He also asked the district court to note the significance of his drug use history, his lack of parental support and mentorship growing up, and his difficult upbringing because these factors contributed to his criminal behavior.

The district court first acknowledged that Morrison's drug addiction, including its effect on his brain chemistry, as well as his abusive parental behavior and the lack of meaningful guidance, were mitigating factors. It then acknowledged that Morrison, based on the criminal history outlined in the PSI, was not "just a drug user"—he had committed some "very violent offenses."

Morrison conceded that "some" of his crimes were violent, but noted that "quite a few" of his convictions were not violent or serious. He reiterated his position that, with treatment and behavioral therapy while in prison, he could successfully reenter society after a sentence of 84 months. Morrison then gave an allocution,

admitting the seriousness of his offenses and apologizing for what he had done.  He also stated that he intended to "take advantage" of the Bureau of Prison's rehabilitative programs and work to "change his life from this point going forward."

The district court stated that it considered the factors in 18 U.S.C. § 3553(a) and, though it considered them in every case, it did not weigh them the same in every case because every defendant and their circumstances were different.  It explained that it needed to consider the need for adequate deterrence and the protection of the public and, based on Morrison's criminal history and his past violent offenses, a longer sentence was warranted.  It stated that, while Morrison's long-term drug use was "a mitigating factor," it was not a complete mitigation of his behavior nor did it "ameliorate the harm to the community that would have occurred" if he would have distributed the fentanyl or used the firearm in his possession.  The court also found that Morrison's offense was "very serious," in part because fentanyl is "a very deadly drug" that is "among the top leading causes of overdoses in the United States."  It also determined that Morrison had possessed fentanyl and a gun in order to make money—a further aggravating circumstance.  In addition, the court found, Morrison had not been deterred from criminal behavior despite his multiple arrests and extensive criminal background.  The district court sentenced Morrison to 132 months' imprisonment and imposed five years of supervised release to follow.  Morrison objected to the procedural and substantive reasonableness of his sentence, stating that the court

did not properly apply the § 3553(a) factors.  Morrison's appeal followed.

As relevant to some of the arguments Morrison makes on appeal, Morrison's co-defendant Thuemler had a guideline imprisonment range was 84 to 105 months.  The district court ultimately varied downward in Thuemler's case, imposing a 77-month sentence, and explained that it was based on his military service and his drug/alcohol dependence.

## II.    STANDARD OF REVIEW

"We review the substantive reasonableness of a sentence for an abuse of discretion."  *United States v. Butler*, 39 F.4th 1349, 1354-55 (11th Cir. 2022).  "In reviewing the reasonableness of a sentence, we will not substitute our own judgment for that of the sentencing court and we will affirm a sentence so long as the court's decision was 'in the ballpark of permissible outcomes.'"  *Id.* at 1355 (quoting *United States v. Rosales-Bruno*, 789 F.3d 1249, 1257 (11th Cir. 2015)).  A party challenging a sentence as unreasonable bears "the burden of establishing the sentence is unreasonable in light of the record and the § 3553(a) factors."  *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

## III.    ANALYSIS

On appeal, Morrison argues that the district court did not properly balance the §3553(a) factors and imposed an unreasonable sentence.  He admits that the district court acknowledged his significant mitigating circumstances, but argues that the court "did not adequately weigh" those factors and "placed too much weight"

on his prior offenses.  He contends that his prior crimes were not particularly violent and that, instead, they were a product of his longstanding need for drug and mental health treatment.  He also argues that his sentence was unreasonable in comparison to his co-defendant, Thuemler.  On that point, he maintains that his conduct and Thuemler's conduct were nearly identical and that both sought downward variances, but that only Thuemler received a downward variance.  Morrison concedes that his criminal history was different than Thuemler's was, but argues that the downward variance motions in the two cases were premised on similar considerations—mental health and substance abuse issues—so the district court erred in not appropriately considering sentence disparities under § 3553(a)(6).  He contends that this disparity, along with his arguments in favor of mitigation, show that the district court made a clear error of judgment under § 3553, thus warranting resentencing.

Under § 3553(a), a district court must impose a sentence "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from future crimes of the defendant.  18 U.S.C. § 3553(a).  In addition, the court must consider, among other factors, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants.  *Id.*

"[W]e have identified three ways in which a district court can abuse its discretion [and] impos[e] a substantively unreasonable sentence: (1) failing to properly consider a relevant sentencing factor that was due significant weight, (2) giving significant weight to a factor that was not relevant, or (3) committing a clear error of judgment by weighing the sentencing factors unreasonably." *Butler*, 39 F.4th at 1356; *see also United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*). In assessing the reasonableness of a sentence, we "ordinarily expect a sentence within the Guidelines range to be reasonable." *Gonzalez*, 550 F.3d at 1324. For similar reasons, a sentence imposed "well below" the statutory maximum also can indicate reasonableness. *Id.*

Though the district court must consider all relevant § 3553(a) factors, "the weight given to each factor is committed to the sound discretion of the district court," and it may attach great weight to one factor over the others. *Butler*, 39 F.4th at 1355. A court's "failure to discuss . . . 'mitigating' evidence" does not indicate that the court "erroneously 'ignored' or failed to consider th[e] evidence in determining [the defendant's] sentence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). "Rather, a district court's acknowledgment that it has considered the §3553(a) factors and the parties' arguments is sufficient." *Butler*, 39 F.4th at 1355 (citing *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009)).

Though the district court is also required "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," a sentencing

disparity among co-defendants is usually not grounds for appellate relief. *United States v. Cavallo*, 790 F.3d 1202, 1237 (11th Cir. 2015); 18 U.S.C. § 3553(a)(6). Moreover, "[a] well-founded claim of [un-warranted] disparity . . . assumes that apples are being compared to apples." *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (quoting *United States v. Mateo-Espejo*, 426 F.3d 508, 514 (1st Cir. 2005)). We have held that evaluating alleged sentencing disparities among similarly situated defendants requires "more than the crime of conviction and the total length of the sentences." *United States v. Azmat*, 805 F.3d 1018, 1048 (11th Cir. 2015). "The underlying facts of the crime and *all of the individual characteristics* are relevant." *Id.* (emphasis added).

Applying these principles here, Morrison has not shown that the district court imposed a substantively unreasonable sentence. *Gonzalez*, 550 F.3d at 1324. The district court considered the parties' arguments and the applicable § 3553(a) factors. 18 U.S.C. § 3553(a); *Butler*, 39 F.4th at 1355. It also identified, and stated that it had considered, Morrison's mitigating factors—including his history of drug use, his parents' abusive behavior, and the lack of meaningful parental guidance—as well as his criminal history, the need for adequate deterrence, the need to protect the public, the need to promote respect for the law, the need for just punishment, and the seriousness of his offenses. As the district court recognized, Morrison's mitigating evidence was compelling, but so was the evidence about his prior crimes. In other words, all of the factors the district court considered were relevant, and we cannot say that the

district court acted unreasonably by considering them and weighing them.  18 U.S.C. § 3553(a).

To the extent that Morrison asserts that the court improperly considered his criminal history by mischaracterizing his past offenses as violent, we cannot say the district court erred.  The PSI shows that Morrison threatened to use, and in some cases did use, physical force against another person on multiple occasions.  Because there was support in the record for the district court's statements, we do not consider the comments erroneous, nor do they reflect that the court relied on an irrelevant factor.  To the extent the district court heavily relied on Morrison's criminal history, doing so was not error here because a district court may attach greater weight to one factor over others.  *Butler*, 39 F.4th at 1355.

As to Morrison's argument that the district court failed to avoid a sentencing disparity between him and Thuemler, Morrison has not shown that he and Thuemler were similarly situated.  The district court did not think so, and there were sufficient facts in the record to support that conclusion.  Morrison's criminal history category was higher than Thuemler's, causing Morrison to have a higher Guidelines range.  The district court also cited Thuemler's military service—a characteristic that Morrison did not have—as one of the reasons for it varying downward in sentencing Thuemler.  Those distinguishing facts were not impermissible or irrelevant in the sentencing process.  *See, e.g.*, *Kimbrough v. United States*, 552 U.S. 85, 110 (2007) (noting, with approval, the district court's consideration of military service as a mitigating sentencing

factor). Because there were substantive differences between Morrison and Theumler, Morrison has not demonstrated a well-founded claim of disparity. *See Docampo*, 573 F.3d at 1101-02; *Azmat*, 805 F.3d at 1048.

Furthermore, Morrison's total sentence of 132 months' imprisonment is within the guideline range and well below the statutory maximum of 480 months. *See Gonzalez*, 550 F.3d at 1324. These are further indicators that the district court's sentence was not unreasonable.

## IV. CONCLUSION

Our review of the substantive reasonableness of a sentence is deferential, and we ask only whether the sentence given was "in the ballpark of permissible outcomes." *Butler*, 39 F.4th at 1355. Based on the totality of the circumstances, Morrison has not shown that the district court abused its discretion and imposed an unreasonable sentence. We, therefore, affirm.

**AFFIRMED.**